[Civ. No. 22800.   First Dist., Div. One.   Jan. 10, 1966.]

Estate of FRED C. WIEDEMANN, Deceased. CHARLOTTE L. WIEDEMANN, Petitioner and Appellant, v. HOWARD C. WIEDEMANN et al., Objectors and Respondents.

Barnett & Wood, Edmund S. Barnett, and John A. Bohn, Jr., for Petitioner and Appellant.

C. Wadsworth White for Objectors and Respondents.

MOLINARI, J.—This is an appeal by Charlotte L. Wiedemann from the judgment of the trial court denying her petition for preliminary distribution and decreeing that she is not entitled to distribution of any portion of the estate of her husband, Fred C. Wiedemann. The sole issue presented on this appeal is whether the nontestamentary agreement which Charlotte entered into with her husband prevents her from taking certain personal property bequeathed to her in her husband's will, which was executed prior to the agreement and not changed thereafter. We are of the opinion that it does.

Fred C. Wiedemann died on March 18, 1963, leaving a will dated July 31, 1953 and a codicil dated January 29, 1955. Fred's will, which was duly admitted to probate along with the codicil, specifically bequeathed to Charlotte, who married decedent on August 3, 1953 and remained married to him until his death, all of testator's furniture, household effects, clothes, and other personal effects, including automobiles, war bonds and personal bank accounts. The residue of Fred's estate was left to his two children, Howard Wiedemann and Ann Wiedemann Kaplan.

On September 1, 1959 Fred and Charlotte entered into a written agreement entitled "Agreement Between Husband and Wife Concerning Status of Their Respective Properties, for Irrevocable Designation of Insurance Beneficiary, Post Mortem Assurances and Waivers of Rights to Inherit by Will, etc." Under this agreement, Fred agreed to create an irrevocable trust naming Charlotte the principal beneficiary, and to irrevocably make Charlotte the sole and principal beneficiary of certain life insurance policies upon Fred's life. In addition both parties agreed to retain in joint tenancy the family home and furnishings and a certain savings account held by them. The agreement then contains the following provisions: "Furthermore, each party hereto waives any

right to inherit from the estate of the other party hereto, either by will or otherwise, it being mutually agreed between the parties hereto that the provisions for each of them to receive property upon the demise of the other, as hereinabove set forth, are sufficient and adequate and are all that is intended to be received by either party. It is understood that each party hereto intends to will the entire balance of his and her separate property to their issue, respectively, of their respective prior marriages and that neither of them will expect to inherit from the other by will or in the absence of will. It is therefore further expressly agreed that each party hereto shall not inherit from the other party by will or otherwise, except as hereinabove set forth, allowing for any additions to or substitutions for the various joint tenancy holdings hereinabove set forth, and each party therefore hereby further agrees that in the event either he or she should receive or be entitled to receive any personal or real property of any nature whatsoever under the last will and testament of the other party hereto, that each and all of such real and personal property shall then be received by the contracting party herein as trustee for the immediate heirs at law of the deceased party, and that he or she will immediately distribute the same to said heirs at law upon the receipt thereof.''

At the time of Fred's death this agreement was still in effect. Also unchanged and in effect (except for the codicil provision, with which we are not concerned on this appeal) was Fred's 1953 will which made provision for Charlotte. Based on these facts, Charlotte filed a petition for preliminary distribution, in which she sought distribution to herself of the assets bequeathed to her under Fred's will. Howard Wiedemann, the executor of his father's estate, in turn, filed a petition for instructions and declaratory relief, in which he set forth the September 1, 1959 agreement between Charlotte and Fred and prayed for a declaration by the court as to the respective rights and interests of Charlotte and of Fred's two children under the will and the subject agreement. In support of his petition, Howard set forth a declaration stating that Charlotte had been present both at the time Fred discussed the contents of his will with his attorney and at the time he executed the subject will, and that Charlotte thus knew of the provisions of the will.

Both petitions were heard jointly by the probate court which thereafter rendered its ''Judgment Determining Distri-

bution Rights in Estate and Denying Petition for Preliminary Distribution.'' In this judgment, the court determined that ''by said September 1, 1959, contract said Charlotte L. Wiedemann waived any right to inherit from the estate of the decedent, which contract was executed for valuable consideration and was in force and effect at the time of the death of the decedent.'' Accordingly, the court decreed that ''Charlotte L. Wiedemann take nothing by her petition herein and that said Charlotte L. Wiedemann is not entitled to distribution of any part of the probate estate herein.'' It is Charlotte's contention on appeal that the 1959 agreement which she entered into with her husband did not effect a surrender or waiver by her of her rights as a legatee under her husband's will.

■ The applicable rule is stated in *Thorp* v. *Randazzo*, 41 Cal.2d 770, 776 [264 P.2d 38], citing *Estate of Crane*, 6 Cal.2d 218, 221 [57 P.2d 476, 104 A.L.R. 1101], and *Grimm* v. *Grimm*, 26 Cal.2d 173, 177 [157 P.2d 841], as follows: ''Expectancies under a will or an insurance policy may be regarded as waived only when it appears that the attention of the parties was directed to such expectancies and their intention to disclaim future rights which might develop from such expectancies is made clear in their property settlement agreement.'' ■ In the light of this principle courts apply the corollary rule that in order to find a waiver of a person's right to take property under a will or insurance policy the language of the particular property settlement agreement which is the basis of the waiver must be carefully weighed and, in addition to segregating the property of the spouses, the agreement must show clearly that it was intended to deprive either spouse of the right to take property under a will or an insurance contract of the other. (*Thorp* v. *Randazzo, supra*, p. 774; *Grimm* v. *Grimm, supra*, p. 176; *Estate of Buchman*, 132 Cal.App.2d 81, 96 [281 P.2d 608, 53 A.L.R.2d 451].) In *Connecticut General Life Ins. Co.* v. *Hartshorn*, 238 F.2d 417, involving the issue of waiver of a right to insurance proceeds based on a property settlement agreement, the reviewing court, applying the rules of *Crane, Grimm*, and *Thorp*, noted that it is ''a fixed principle of law that the waiver of a right or entitlement to property goes only to rights or property as to which the waiving party has knowledge.'' (P. 421.)

Applying the foregoing principles to the particular facts

of the case at hand the reviewing courts in *Crane*,[1] *Grimm*,[2] and *Connecticut General*[3] held that the expectancies involved therein had not been waived, while in *Thorp*[4] it was held that they had. The result reached in each of these cases turned upon whether the language of the property settlement agreement between the spouses clearly indicated that the parties' attention had been directed to the expectancies under the will or insurance policy and that the party against whom a waiver was urged intended to disclaim future rights that might develop from such expectancies.

In the instant case the trial court correctly determined that the agreement entered into between Charlotte and Fred constituted a waiver of Charlotte's right to take the personal property which her husband's will bequeathed to her. Charlotte knew at the time she executed the subject agreement that her husband's will contained various bequests in her favor. The statements in the declaration made

---

[1]In *Crane*, the parties agreed that they would not oppose or contest each other's will, and that they had settled and forever determined "'all of their respective rights to, of and in any inheritance the one from the other, respectively, or in or to the estate of either.'" (P. 219.) The Supreme Court noted that "there is a total failure to set forth in the contract any renunciation of the right to accept and receive future gifts to the one from the other whether by way of gift *inter vivos*, by devise, or by bequest." (P. 220.)

[2]In *Grimm*, the property settlement agreement between the spouses gave the husband the right to change the beneficiary on his insurance policy and the wife agreed to execute any document necessary therefor. The husband died without undertaking to make such change. It was held that there was no immediate release of the wife's interest as such beneficiary and that the agreement left it to the husband to decide in the future whether or not he desired to change the beneficiary. The Supreme Court held, moreover, that the parties' intention to exclude from the property settlement agreement rights that might accrue to the wife at the death of her husband as a result of his bounty was indicated by the provision of the agreement in which the wife waived all rights of inheritance in her husband's estate "'except . . . as may be provided in any will and/or codicil . . . in effect at the date of his death.'" (P. 179.)

[3]The *Connecticut General* case pointed out that the property settlement agreement in question made no mention of the particular insurance policy the proceeds of which were claimed by the wife and that the wife testified she had never heard of the policy until after the property settlement agreement had been executed.

[4]In *Thorp*, specific reference was made in the property settlement agreement to the particular insurance policy under which the wife claimed an interest, and the wife expressly waived all claim to "'any benefits that she may have at present, or which may hereafter be derived from'" such policy. (P. 772.) It was held that this language clearly indicated that the parties' attention had been directed to the expectancy of the insurance proceeds, and that it was intended that the wife waive all interest therein, present and future, even though she remained the beneficiary at the time of the husband's death.

by the executor that Charlotte was present at the time her husband discussed the contents of his will with his attorney and that she knew its provisions in her favor are uncontroverted. The trial court, therefore, was justified in concluding that Charlotte was fully aware at the time she entered into the subject agreement with her husband that his will contained provisions in her favor. The fact that the agreement itself does not mention or specifically describe the nature of Charlotte's expectancies under Fred's will does not preclude this conclusion. Charlotte's knowledge of the provisions in her favor contained in the will, when considered in conjunction with the provisions in the agreement, affords a clear indication that the parties' attention had been directed to the expectancies under the will and that they intended that Charlotte waive future rights which might develop from such expectancies.

Turning to the agreement itself, its terms clearly, explicitly and unambiguously indicate an intention on Charlotte's part to renounce her rights under decedent's will. In the first place, we note that the title of the agreement contains the express reference to "Waivers of Rights to Inherit by Will, etc." Secondly, by the terms of paragraph five of the agreement, Charlotte three times agreed that she was not to inherit *by will* from Fred. As to this point, this paragraph specifically provides as follows: "Furthermore, each party hereto waives any right to inherit from the estate of the other party hereto, either *by will* or otherwise," and "It is understood . . . that neither . . . will expect to inherit from the other *by will* or in the absence of will. It is therefore further expressly agreed that each party hereto *shall not inherit* from the other party *by will* or otherwise. . . ." (Italics added.) And finally, as a further indication of an intention on the part of Charlotte to renounce her right to inherit under Fred's will, the parties agreed that "in the event either he or she should receive or be entitled to receive any personal or real property of any nature whatsoever under the last will and testament of the other party hereto, that each and all of such real and personal property shall then be received by the contracting party herein as trustee for the immediate heirs at law of the deceased party, and that he or she will immediately distribute the same to said heirs at law upon the receipt thereof."

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.