Betty Harper CULBERTSON, Executrix of the Estate of Joyce K. Culbertson, and as an individual, Plaintiff and Respondent,

v.

CONTINENTAL ASSURANCE COMPANY, a Tennessee corporation, Chicago Bridge and Iron Company Profit-Sharing Plan Trust, an Illinois Trust, Beth Rowley Culbertson Conrad, an individual, Loretta Culbertson, an individual, Richard Culbertson, an individual, Chrystella Culbertson, an individual, and Elizabeth Culbertson, an individual, Defendants and Appellants.

No. 17148.

Supreme Court of Utah.

June 4, 1981.

David R. Irvine, Salt Lake City, for defendants and appellants.

Lyle W. Hillyard, Logan, for plaintiff and respondent.

MAUGHAN, Chief Justice:

Plaintiff, the widow of Joyce K. Culbertson, acting as executrix of his estate, initiated this action to have the proceeds of a profit-sharing plan and certain insurance policies awarded to decedent's estate rather than to the designated beneficiary, the defendant, Beth Rowley Culbertson Conrad. Defendants, Continental Assurance Company and Chicago Bridge And Iron Company Profit-Sharing Plan Trust were dismissed from the action after the funds they held were given to the attorneys of the parties to be deposited jointly in a bank account, pending resolution of this action. Plaintiff moved for partial summary judgment seeking an award of the proceeds from the profit-sharing plan. Defendant, Conrad, moved for summary judgment seeking an award of all the proceeds, where she had been designated beneficiary. The trial court granted plaintiff's motion and awarded her the proceeds of the profit-sharing plan and partially granted Conrad's motion, awarding her the proceeds of the insurance policies. Conrad, hereinafter identified as defendant, appeals and plaintiff cross-appeals therefrom. The award to defendant is affirmed, the award to plaintiff is reversed, and the cause is remanded to the trial court with an order to enter judgment awarding defendant the proceeds of the profit-sharing plan.

Defendant and Joyce K. Culbertson were married in July 1943, six children were issue of this marriage, four of whom were minors at the time a decree of divorce was entered in April 1968. Subsequently, Mr. Culbertson married Betty Harper Culbertson, one child was the issue of that marriage. Mr. Culbertson died October 17, 1978, while still in the employ of Chicago Bridge And Iron Company, C.B.I. Plaintiff was the recipient of extensive death benefits from C.B.I., including $54,000 in insurance benefits, a pension of $297.78 per month, health and accident insurance, 193 shares of common stock in C.B.I., unpaid earnings of $1,989.00, savings of $782.49, as well as social security benefits. In his will, decedent devised all his property to his widow. Plaintiff declined to disclose on discovery the value of

the estate and further asserted the attorney-client privilege when defendant sought discovery from the attorney, who was engaged by decedent to plan his estate and draft his will.

In connection with his employment, decedent was further insured under four group life insurance policies, the proceeds of which totalled $8,000. Defendant was the designated beneficiary under these policies, the proceeds of which were awarded to her by the trial court. Decedent was also a participant in a profit-sharing plan, the value of which was $24,357.19, at the time it was submitted to the attorneys for deposit in this action. Under the profit-sharing plan, a participant was not permitted to withdraw the funds until he terminated his employment or retired. Upon retirement the lump sum was paid to the participant, unless he elected to receive it in ten equal installments. Defendant was the designated beneficiary by decedent to this plan; the trial court awarded the proceeds therefrom to plaintiff.

Another fact submitted to the trial court was that decedent did change the beneficiary designation on a veteran's insurance policy in 1969, which defendant urges supports an inference of decedent's intent to retain her as designated beneficiary on the policies herein.

The trial court ruled that under the decree of divorce the decedent was awarded as his sole and separate property the funds on deposit in the profit-sharing plan. The effect of this provision in the decree was to terminate defendant's rights as a beneficiary; therefore, the court reasoned the funds belonged to decedent and passed to his estate.

The provision in the decree concerning the profit-sharing plan stated:

"The plaintiff [decedent] be and he is hereby awarded and there is hereby confirmed to him as his sole and separate property that property now in his possession and under his control, including funds on deposit with the Chicago Bridge and Iron Company, constituting a profit sharing plan, a 1966 Ford F–250 Truck and his personal effects."

Both parties agree that the law concerning insurance policies is also applicable to the resolution of the issues involved in the profit-sharing plan.

Defendant cites and relies on *Uckerman v. Lincoln National Life Insurance Co.,*[1] wherein this Court held:

"... The only way a beneficiary can be changed or eliminated is as provided in the contract of insurance itself or as mandated by Section 31–19–26 of the Utah Code. This, the decedent failed to do; thus, the beneficiary of his insurance policy was as originally designated and any attempt to change that designation was void."[2]

To change a beneficiary, the profit-sharing plan required the following:

"9.05 Each election, renunciation, revocation and designation of a Beneficiary for which this Plan provides shall be made in writing on a form prescribed or approved by the Committee and shall be effective when (but not before) the Secretary of the Committee has received the same."

■ The foregoing does not completely resolve the issues of this case for even though the beneficiary has not been changed in accordance with the statute or policy, if the language in a particular decree of divorce must be construed as a waiver or renunciation of a party's right to take as a beneficiary, then the proceeds of the policy may not be paid to the former spouse, although he remains the designated beneficiary.

■ The beneficiary of an insurance policy has merely an expectancy, contingent

---

1. Utah, 588 P.2d 142, 144 (1978).

2. Section 31–19–26, Utah Code Annotated, 1953, provides: "No modification of any insurance contract shall be effective unless in writ- ing executed by the insurer and if it contains conditions limiting or reducing benefits or protection otherwise applicable such writing shall also be executed by the insured."

on the insured's death. The insured, if owner of the policy, during his lifetime, has a right to deal with his policy in any manner he desires. This includes the right to change the beneficiary, or to cash in the policy or sell or assign his interest.[3] An expectancy may be assigned, where supported by a fair consideration, and equity will enforce such an assignment, if it be not contrary to public policy.[4] The distinction between the ownership interest of an insured and the expectancy of a beneficiary becomes important in construing the terms of a decree of divorce.

◼ In *Grimm v. Grimm*[5] the issue was whether the divorced spouses had agreed not only that the life insurance policy should become the separate property of the husband but that no rights should accrue to the wife, although she remained the designated beneficiary at the time of her former husband's death. The Court pointed out that the interest of a beneficiary, designated by an insured who has the right to change the beneficiary is, as a legatee under a will, a mere expectancy of a gift at the time of the insured's death. When such an expectancy has developed into a right, a prior assignment or release of it becomes enforceable in equity. However, an agreement will be deemed to constitute an equitable assignment or renunciation of an expectancy only if it expressly or by necessary implication so provides. Therefore, the courts weigh the language of an agreement carefully before concluding there has been an elimination of rights, the disavowal of which is not necessarily connected with the purpose of such agreements.

◼ From these principles the courts have derived a rule which they apply to property settlements between spouses. This rule provides that general expressions or clauses in such agreements are not to be construed as including an assignment or renunciation of expectancies; therefore, a beneficiary retains his status under an insurance policy or a will if it does not clearly appear from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take property under the will or insurance contract of the other.

◼ In *Grimm* the court further amplified the foregoing rule by stating that expectancies under a will or an insurance policy are regarded as waived only when it appears that the attention of the parties was directed to such expectancies and their intention to disclaim future rights that might develop from such expectancies was made clear in the contract. The Court stated:

"... Since the husband has the power to revoke his will or to change the beneficiary named in an insurance policy his failure to do so ordinarily indicates that he did not wish to effect a change so that in effect his failure to act amounts to a confirmation of the will or designation of the wife in the insurance policy. Both instruments are to be read as expressing the decedent's intentions at the time of his death.... Moreover, while a property settlement agreement provides for what the husband is conceding to his wife as a matter of right, frequently he is willing to grant more to her as a matter of bounty, ..."[6]

The court observed that under the agreement, the insurance policy became the separate property of the husband, but there was no indication that anything else was intended with respect thereto.[7] The Court stated:

"... It was for the husband to decide whether he wished his wife or someone else to get the proceeds of the policy. If the decedent intended that plaintiff, who

3. *Jensen v. Eddy*, 30 Utah 2d 154, 160, 514 P.2d 1142 (1973).

4. *Latimer v. Holladay*, 103 Utah 152, 158, 134 P.2d 183 (1943).

5. 26 Cal.2d 173, 157 P.2d 841 (1945).

6. Id. at p. 843.

7. The agreement provided: "... second party hereby transfers, releases and relinquishes to first party all interest in and to said policy of insurance and the premiums paid thereunder and the avails thereof."

was his wife for more than thirty years, should have the insurance proceeds, he would naturally suppose that his intention would be fulfilled if he did not change the beneficiary. It is significant that he lived for several years after the agreement without making such a change...." [8]

Based on the foregoing, the Court in the *Grimm* case ruled the former wife had not renounced the expectancy and was therefore entitled to receive the proceeds when her former husband did not change the beneficiary of his policy.[9]

The type of provision which will be held to constitute a waiver or renunciation of an expectancy is illustrated in *Thorp v. Randazzo*.[10] The agreement provided the plaintiff "does hereby waive all claims to any benefits that she may have at present, or which may hereafter be derived from the following described life insurance policies upon the life of the first party (deceased), including community interest of second party (plaintiff) therein, or in the premiums paid for said policies, and agrees to execute any and all documents that may be required by said insurance companies to complete the release of the interest of said second party in said insurance policies." In addition to the specific recitals concerning the insurance, the agreement provided:

"The said parties hereto each hereby waive any right and all right to the estate of the other left at his or her death and forever quitclaim any and all right to share in the same of the other, by laws of succession, and said parties hereby release one to the other all right to be the administrator or administratrix or executor or executrix of the estate or will of the other, ... and from the date of this agreement hereafter said waiver of the other in the estate of the other shall be effective and they shall have the right of

single persons and maintain the same relation of such toward each other ... this agreement is a full and final settlement between said parties and each party hereto has had independent legal advice."

The Court observed in the *Thorp* case that the foregoing language clearly indicated that the parties' attention had been directed to the expectancy of the insurance proceeds and that it was intended that the wife waive all interest therein, present and future. The parties thus agreed that no rights were to accrue to the wife, even though she remained the beneficiary at the time of the husband's death. The effect thereof was a present divestment of all claims the wife might otherwise have had in the insurance policies. The Court held that in light of all of the provisions in the agreement, the conclusion was inescapable that the agreement was intended to constitute an immediate waiver by the wife of any right which she might have had in the insurance policies, including that right as a beneficiary.[11]

A case upon which plaintiff relies is *Beneficial Life Insurance Company v. Stoddard*;[12] this case is of the genre of *Thorp v. Randazzo*, for under the property settlement agreement all life insurance and savings were awarded to the husband. In addition, it was expressly agreed between the parties that they had reached a full and complete settlement of all property rights, community or otherwise, and that each party waived any and all further demand against the other party of every kind and nature, excepting those set out in the agreement. The Court ruled that the language of the property settlement could reasonably be construed as a relinquishment of the wife's rights to the proceeds of the insurance, even though the insured had not removed her as the beneficiary under the policy.

---

**8.** Id. at p. 844.

**9.** Also see *Prudential Insurance Company Of America v. Broadhurst*, 157 Cal.2d 375, 321 P.2d 75 (1958); *Shaw v. Board of Administration*, 109 Cal.App.2d 770, 241 P.2d 635 (1952).

**10.** 41 Cal.2d 770, 264 P.2d 38, 39, 40–41 (1953).

**11.** Also see *In re Wiedemann*, 239 Cal.App.2d 269, 48 Cal.Rptr. 558 (1966).

**12.** 95 Idaho 628, 516 P.2d 187, 70 A.L.R.3d 344 (1973).

In the instant case there was none of the comprehensive, inclusive language in the decree of divorce, which could constitute a relinquishment or waiver as determined in *Thorp v. Randazzo.* The recent decision of *Redd v. Brooke* [13] is factually comparable to the instant one. Therein, the administrator of the estate of the husband contended that a provision in the decree of divorce terminated the wife's interest, although the husband had taken no steps to remove her as the policy's designated beneficiary. Under the decree of divorce each party was awarded life insurance on his or her life.

■ The Court recited the general rule that the rights of the beneficiary in an ordinary life insurance policy are not affected by subsequent divorce, particularly where no attempt is made to change the beneficiary after the divorce, and the insured continues payments on the policy.[14] The Court observed this generality is modified where the wife has contracted away her rights in the insurance on her husband's life when a decree of divorce is obtained. However, the beneficiary retains status under the policy, if the language of the property settlement agreement does not clearly indicate that, in addition to segregation of their property, it was intended to deprive either spouse to take under the insurance contract of the other.[15]

The court stated:

"... It is a simple matter to change a beneficiary on a policy after divorce, just as it is a simple matter to include an explicit waiver or relinquishment of the right of the beneficiary to take under the policy when the decree is drawn. Absent unequivocal language or actions to support a finding of relinquishment or waiver by Mary, we decline to speculate as to what the parties may have intended. The divorce decree settled the community property interests of the parties awarding to each the ownership of the policy on his or her life including any cash surrender value which may have accrued and the right to name a new beneficiary."

"We hold that there was no waiver or relinquishment in the decree of divorce of Mary's right to take as beneficiary under Wendell's policy of insurance.... we are persuaded that this court should require explicit language in a divorce decree to divest a former spouse of his or her rights as designated beneficiary...." [16]

■ As the analysis of the aforementioned cases indicates, the cases may generally be broken down into three categories, in which the former spouse claims the proceeds of an insurance policy on the ground he is the designated beneficiary. In the first, the spouse, in the property settlement or decree of divorce, relinquishes any claim to ownership of the policies and frequently agrees to execute any documents to sever such interest. Unless there is in addition a specific provision in the decree or property settlement explicitly waiving the expectancy interest the former spouse is entitled to receive the proceeds as designated beneficiary. The courts emphasize the decedent's ample opportunity to change the beneficiary, if he so desired, and the fact that he had made such a change in regard to another policy.[17] In the second group of cases, the insurance policy is not specifically mentioned in the property settlement or decree of divorce, however, there are provisions effecting a complete settlement of the parties' property interests and awarding each all right, title, and interest to his respective property. An agreement with such general provisions is deemed merely to effect a division of the parties' property, and the courts rule they cannot reasonably infer from such language that the spouse has

---

**13.** Nevada, 604 P.2d 360 (1980).

**14.** 4 Couch on Insurance 2d, Sec. 27.111, pp. 647–648.

**15.** 4 Couch On Insurance 2d, Sec. 27.114, p. 655.

**16.** At pp. 361–362 of 604 P.2d.

**17.** *Lincoln National Life Insurance Company v. Blight,* 399 F.Supp. 513 (1975), *affirmed* 538 F.2d 319; *Cannon v. Hamilton,* 174 Ohio St. 268, 22 Ohio Ops.2d 331, 189 N.E.2d 152 (1963); *Damon v. Northern Life Insurance Co.,* 23 Wash.App. 877, 598 P.2d 780 (1979).

released an expectancy interest as the beneficiary under his former spouse's insurance policy.[18] In the third group of cases, the language in the property settlement or decree of divorce was sufficiently comprehensive as to establish clearly that the spouse had waived or relinquished any expectancy.[19]

Plaintiff cites and relies on *Romero v. Melendez*,[20] wherein the court ruled that the decree of divorce, which awarded the insurance policies to the husband as his sole and separate property, divested the wife of any and all interest including the expectancy as a beneficiary. Appleman[21] criticizes this ruling and states:

"... (the only language quoted in the opinion from the decree merely gave the husband the policy as sole and separate property—this of course gave him ownership but absent further language not set out in the case should not have affected the beneficiary designation)."

 In the instant case there were no broad, comprehensive provisions in the decree of divorce which could reasonably be construed as a relinquishment or waiver of any or all expectancies. The record indicates that at the time of divorce there was $1500.00 on deposit in the profit-sharing fund. Initially, defendant claimed as part of her share of the marital estate one-half of these funds. Subsequently, the parties adjusted their differences and defendant executed a consent and waiver, and Mr. Culbertson appeared and was awarded the decree of divorce. In the decree he was awarded the "funds on deposit." The language of the decree does not indicate that the parties' attention was directed to the

expectancy of the profit-sharing plan, and there was no expressed intention to waive all interest, present and future. Defendant's expectancy was an inchoate interest, which could not vest until Mr. Culbertson's death; in the interim, a period in excess of ten years, he could have defeated this contingent interest by changing the designated beneficiary. Since Mr. Culbertson neither changed the designated beneficiary nor as the moving party in the divorce action sought an explicit relinquishment of defendant's expectancy, she is entitled to the proceeds of the profit-sharing plan, the interest to which vested in her on her former husband's death. We agree with the decision in *Redd v. Brooke*, supra, this Court will require explicit language in a divorce decree to divest a former spouse of his right as designated beneficiary.

On her cross-appeal, plaintiff contends the trial court erred in awarding the proceeds of the four insurance policies to defendant, the designated beneficiary. Plaintiff urges that this matter could not be determined on summary judgment as there was a triable issue of fact as to the intention of the parties, after the conditions in the decree were fulfilled.

The decree of divorce provided:

"The plaintiff (decedent) be and he is hereby ordered and directed to maintain his present life, health and accident insurance and to retain defendant, together with minor children of plaintiff and defendant as beneficiaries on said life insurance until such time as plaintiff remarry and thereafter to retain the minor children of plaintiff and defendant until such time as each of said children attain his or her majority."

18. *Davis v. Davis*, Fla.App., 301 So.2d 154 (1974); *McClain v. Beder*, 25 Ariz.App. 231, 542 P.2d 424 (1975); *Lynch v. Bogenrief*, Iowa, 237 N.W.2d 793 (1976); *Mullenax v. National Reserve Life Insurance Company*, 29 Colo.App. 418, 485 P.2d 137 (1971); *Cassiday v. Cassiday*, 256 Md. 5, 259 A.2d 299 (1969); *Partin v. Cordova*, Tex.Civ.App., 464 S.W.2d 956 (1971); *O'Tooele v. Central Laborers' Pension & Welfare Funds*, 12 Ill.App.3d 995, 299 N.E.2d 392 (1973); *Wolf v. Wolf*, Ind., 259 N.E.2d 93 (1970); *Rountree v. Frazee*, 282 Ala. 142, 209 So.2d 424 (1968).

19. *Hollaway v. Selvidge*, 219 Kan. 345, 548 P.2d 835 (1976); *Baekgaard v. Carreiro*, (9th Cir.), 237 F.2d 459 (1956); *In the Matter of the Estate of McEndaffer*, 192 Colo. 431, 560 P.2d 87 (1977).

20. 83 N.M. 776, 498 P.2d 305 (1972).

21. 2 Appleman Insurance Law And Practice, 1980 Pocket Part, Sec. 804, pp. 29–30.

The trial court ruled that the decree did not by its terms expressly terminate defendant's status as a beneficiary upon the occurrence of the recited events. Upon fulfillment of these conditions, Mr. Culbertson had the right to change the designated beneficiary; since he did not do so, defendant was entitled to the proceeds from the insurance policies.

Since there was no waiver of defendant's expectancy interest in the decree, the following rule is applicable:

"In consequence of the fact that ordinarily divorce does not affect the right of the named beneficiary, it follows that where the husband does not change the beneficiary of his policy after having been divorced, the divorced wife is entitled to the proceeds of the policy upon the death of the insured." [22]

Under the circumstances, there was no triable issue of fact, and the award of the insurance proceeds to defendant is sustained.

HALL, STEWART, HOWE and OAKS, JJ., concur.

---

22. 5 Couch On Insurance 2d, Sec. 29:4, p. 267.