**FOX VALLEY & VICINITY CONSTRUCTION WORKERS PENSION FUND, Plaintiff–Appellee,**

v.

**Laurine BROWN (LaMar), Defendant–Appellant,**

and

**Dessie Brown, Defendant–Appellee,**

and

**All Unknown Claimants, Defendants.**

No. 88–2322.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1989.

Decided June 29, 1989.

Gerald L. Morel, Masuda, Funai, Eifert & Mitchell, Ltd., Chicago, Ill., for defendant-appellant Laurine Brown (LaMar).

James Merrill Neuman, Baum & Sigman, Chicago, Ill., Roy Hasseltine, Harris & Hasseltine, Florence, Ala., Nicholas F. Esposito, Esposito & Heuel, Mark A. Schramm, Terence M. Heuel, Chicago, Ill., for defendant-appellee Dessie Brown.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an interpleader action filed by the Fox Valley & Vicinity Construction Workers Pension Fund ("Fund") to determine the proper recipient of a death benefit payable because of the death of Fund participant James Brown ("James"). The defendants in the action are Laurine Brown ("Laurine"), James' former spouse, and Dessie Brown ("Dessie"), James' mother. The district court denied Laurine's motion for summary judgment and entered summary judgment against Laurine and in favor of Dessie, ordering the Fund to pay the death benefit to Dessie. Laurine appeals this decision.

The Fund brought this interpleader action under 28 U.S.C. § 1335. The district court had jurisdiction pursuant to 29 U.S.C. § 1132(e). This case raises issues under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## I. FACTUAL BACKGROUND

Laurine and James were married on April 14, 1982. James was covered by the Fox Valley & Vicinity Construction Workers Pension Plan ("Plan"), which provided for a Lump Sum Death Benefit ("Death Benefit") payable to the plan participant's designated beneficiary if the participant died before reaching retirement age. The Plan specifies how a participant may designate a beneficiary:

The Participant's Beneficiary shall be the person or persons he so designates in the last written notice received in the Administrative Office prior to the Participant's death. It shall be the responsibility of the Participant to notify in writing the Administrative Office of his choice of Beneficiary or any change in Beneficiary. A Participant may, without the consent of his then designated Beneficiary, or Beneficiaries, change his Beneficiaries. In the event that the [P]articipant shall fail to name a Beneficiary, or if such Beneficiary shall not be living at the time of the Participant's death, such benefits shall be paid to:

(a) his legal spouse, if living;

(b) if no spouse be living, then to his living children in equal shares;

(c) if no spouse or children be living, then to his parents in equal shares, or the survivor of such parents if only one (1) be living;

(d) if no spouse, children, or parents be living, then to his living brothers and sisters in equal shares;

(e) if no spouse, children, parents, or brothers and sisters be living, then to the estate of such deceased Participant.

In 1986, James executed a Beneficiary Designation Form naming Laurine as his beneficiary. On September 29, 1986, Laurine and James were divorced. They both agreed to a court-approved property settlement that included the following proviso:

The parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.

Even after their divorce, James continued to live with Laurine for much of 1986 and 1987. James made no effort to change his designated beneficiary after the divorce. James died on June 17, 1987.

This dispute arose when Laurine attempted to have the Death Benefit paid to her. The Fund refused, claiming that it was uncertain who should receive the Death Benefit. The Fund then filed this interpleader action, asserting that although Laurine was the designated beneficiary, it was uncertain as to the legal effect of the marital property settlement agreement in which Laurine seemingly waived her right to any benefits from the Fund. The Fund also named Dessie as a defendent since, under the Plan, Dessie would receive the benefit if the court determined that Laurine properly waived her claim.

Laurine moved for summary judgment on October 21, 1987, arguing that James, who was unrepresented at their divorce hearing, never read or understood the terms of the marital property settlement, which had been prepared by her lawyer. Laurine also asserted that even after the divorce, James intended for her to receive benefits from the Fund. The district court denied Laurine's motion for summary judgment. 684 F.Supp. 185 (N.D.Ill.1988). The court then entered summary judgment against Laurine and in favor of Dessie, finding that Laurine had waived her right to the Death Benefit. In this appeal, Laurine finds fault with the district court's use of the marital property settlement agreement. Laurine claims the court erred when it allowed the marital property settlement to affect Laurine's right under the Plan.

## II. DISCUSSION

Summary judgment should be granted only when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 50(c). There were no disputed facts in this case and the district court found that, as a matter of law, the death benefit should be paid to Dessie. We review that decision *de novo*. *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 354 (7th Cir.1988).

As the district court noted, this is a case of first impression under ERISA. We must determine whether a divorced spouse who was designated as a beneficiary prior to the divorce will still receive the Death Benefit despite a provision in the divorce settlement waiving any rights to the benefit. Because ERISA preempts state pen-

sion benefit laws, 29 U.S.C. § 1144(a), we must find the answer to this issue within ERISA itself or in the federal common law interpreting ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (state law relating to employee benefit plans preempted); *Mutual Life Ins. Co. of New York v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988) (uniform remedies are fundamental to ERISA). In this case, our attention is focused on ERISA's anti-alienation provisions. 29 U.S.C. § 1056(d)(1), (d)(3)(A).

ERISA provides that a pension plan must prohibit the alienation or assignment of benefits. 29 U.S.C. § 1056(d)(1). These "spendthrift" provisions are designed to prevent unwise alienation or assignment. *AT & T v. Merry*, 592 F.2d 118, 124 (2d Cir.1979). ERISA was amended in 1984 to clarify the effect of these spendthrift provisions on family support obligations such as alimony, child support, and separate maintenance. Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1433 (1984). *See* S.Rep. No. 575, 98th Cong., 2d Sess. 18–19, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2564–65. Prior to the enactment of these amendments, some courts tentatively exempted state domestic relations orders from the ERISA anti-alienation provisions. *See, e.g., Operating Engineers' Local #428 Pension Trust Fund v. Zamborsky*, 650 F.2d 196, 200 (9th Cir. 1981) (order assigning benefits for alimony not in conflict with ERISA); *AT & T v. Merry*, 592 F.2d at 124–25 (ERISA provisions do not alter traditional support obligations); *Cody v. Riecker*, 594 F.2d 314, 317 (2d Cir.1979) (ERISA does not prevent garnishment for support obligations).

The 1984 amendments removed most uncertainties by creating a limited exception to the anti-alienation provisions for a state domestic relations order if the order is a "qualified domestic relations order" ("QDRO"). 29 U.S.C. § 1056(d)(3)(A). A domestic relations order must meet certain technical requirements to be recognized as a QDRO under ERISA. 29 U.S.C. § 1056(d)(3)(B)–(E). All parties to this case agree that the property settlement does not meet the requirements of a QDRO.

Laurine argues that since the settlement is not a QDRO, the anti-alienation provisions nullify the property settlement. She claims that the settlement can have no effect on the designation of beneficiary. ERISA prohibits the assignment or alienation of benefits and, according to Laurine, ERISA makes an exception only for a QDRO. Laurine claims that if a marital property settlement does not qualify, ERISA benefits must be paid pursuant to the original designation of beneficiary.

Laurine is correct when she states that ERISA preempts any attempt to alienate or assign benefits by a domestic relations order if that order is not a QDRO. However, the marital property settlement at issue in this case was not an assignment or alienation of benefits by James. In the settlement, James made no attempt to dispose of his interest. Instead, Laurine disclaimed any right she had to the benefits. Laurine, a non-participant in the Plan, waived her right to any benefit, just as James waived any right to benefits from Laurine's pension. Such a waiver is not preempted by ERISA's spendthrift provisions.

In arguing that her waiver is preempted by ERISA, Laurine misinterprets the purpose behind the spendthrift provisions and the intended effect of a QDRO. The spendthrift provisions of ERISA are designed to "ensure that the employee's accrued benefits are actually available for retirement purposes," by preventing unwise assignment or alienation. H.R.Rep. No. 807, 93d Cong., 2d Sess.1974, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4734. These provisions focus on the assignment or alienation of benefits by a participant, not the waiver of a right to payment of benefits made by a designated beneficiary. The QDRO exception is also centered on the alienation or assignment of benefits. As noted in the legislative history, "the creation, recognition, or assignment of the alternate payee's right to the benefits" will only be exempted from the spendthrift provisions if the QDRO requirements are met. S.Rep. No. 575, 98th Cong., 2d Sess. 19, *reprinted in* 1984 U.S. Code Cong. & Admin.News 2547, 2565. A

QDRO creates a right to payment of benefits. The marital property settlement at issue in this case waives right to payment.

The QDRO requirements specify the procedures necessary to assign benefits, but those procedures need not be followed when a non-participant is waiving an interest in pension benefits. ERISA allows beneficiaries to waive their interests in benefits. *See, e.g.,* 29 U.S.C. § 1055(c)(1)(A)(i) (spouse may waive interest in joint and survivor form of benefit at any time). The 1984 ERISA amendments made clear that a QDRO was the proper method of preserving the interests of a former spouse in pension benefits. *See* S.Rep. No. 575, 98th Cong., 2d Sess. 19, *reprinted in* 1984 U.S. Code Cong. & Admin.News 2547, 2565. As the district court noted, if the Browns had wished to secure Laurine's interest in the benefits, they could have executed a QDRO establishing such a right. Other methods were also available to establish Laurine's interest. Laurine and James could have left any mention of pension benefits out of the marital property settlement, or James could have redesignated Laurine as his beneficiary. Instead, the Browns jointly agreed to waive all interest in each other's pension plans. Such a waiver does not fall within the scope of ERISA's spendthrift provisions. We hold that a proper waiver of interest by a non-participant in a plan is not preempted by ERISA's anti-alienation provisions.

Having established that it is possible for a non-participant to waive an interest in pension benefits without using a QDRO, we must now determine whether there was an effective waiver of interest in this case. ERISA is silent on the issue of what constitutes a proper waiver in this situation and the existing body of federal common law interpreting ERISA gives little guidance on this point. After finding that ERISA's anti-alienation provisions did not prohibit a waiver of pension benefits under these circumstances, the district court turned to state law and found that under Illinois law, and in most jurisdictions, a divorce decree would not affect the pension rights of a person who has been designated as a beneficiary unless the property settlement spe-

cifically included a termination of those rights. *See O'Toole v. Central Laborers' Pension and Welfare Funds,* 12 Ill.App.3d 995, 997, 299 N.E.2d 392, 394 (1973). The district court held that the waiver in the marital property settlement was a specific termination of benefits.

When ERISA is silent on an issue, a federal court must fashion federal common law rules to govern ERISA suits. *Nachwalter v. Christie,* 805 F.2d 956, 959 (11th Cir.1986) (courts must develop federal rules when interpreting ERISA); *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980) (Congress intended that courts would develop federal common law for ERISA). In making such rules, we must of course look to the statute itself for guidance, *In re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986), and it is also proper to turn to state law when creating such rules, *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985), as long as such state law is consistent with the policies underlying the federal statute at issue, *Nachwalter,* 805 F.2d at 960. The district court properly examined a closely analogous area of state law—a former spouse's right to recover life insurance benefits. In Illinois, a decree of divorce only affects the rights of a divorced spouse if a property settlement agreement specifically includes a provision terminating the beneficiary's interest. *O'Toole,* 12 Ill.App.3d at 997, 299 N.E.2d at 394 (citations omitted). Many states follow this rule when interpreting divorce settlement provisions. *See, e.g., Bell v. Garcia,* 639 S.W.2d 185 (Mo.Ct.App. 1982); *Culbertson v. Continental Assur. Co.,* 631 P.2d 906 (Utah 1981); *Lynch v. Bogenrief,* 237 N.W.2d 793 (Iowa 1976). The district court was correct in finding that the waiver contained in the marital property settlement specifically dealt with the pension fund benefits, including the Death Benefit at issue in this case.

Laurine counters by pointing to other language in *O'Toole* that seems to qualify the ability of a divorce settlement to affect the rights of a beneficiary. In *O'Toole,* the Illinois courts did state that only a specific waiver of benefits would affect a benefi-

ciary's rights "unless the policy itself or a statute provides otherwise." *O'Toole*, 12 Ill.App.3d at 997, 299 N.E.2d at 394. As the district court pointed out, this qualification does not refer to the general method of designating a beneficiary found in the policy. Instead, the *O'Toole* court was referring to provisions or statutes that would automatically terminate a spousal interest upon divorce. Laurine's argument that only the method of changing beneficiaries provided in the Plan should be given legal effect is unpersuasive.

■ The ability of a spouse to waive rights to a benefit through a specific waiver in a divorce settlement has been recognized by many courts and we adopt that rule for purposes of ERISA. Laurine contends that such a rule will work against ERISA's need for uniformity and bring uncertainty into the administration of the plan. We are not convinced by these arguments. As we have noted, federal courts are charged with creating federal common law rules to govern ERISA. *Nachwalter*, 805 F.2d at 959, and the creation of such federal rules will provide the needed uniformity. We also disagree with Laurine's assertion that our decision imposes burdensome obligations on plan administrators. No such additional burdens will be imposed because, under the ERISA statutory scheme, a plan administrator must investigate the marital history of a participant and determine whether any domestic relations orders exist that could affect the distribution of benefits. This case arose from just such an investigation. Our decision only requires plan administrators to continue their current practice of thoroughly investigating the marital status of a participant.

■ Finally, Laurine asserts that James was unrepresented at their divorce hearing and that he did not read or understand the provisions of the property settlement, including the waiver provision. This argument is also unpersuasive. James did sign the agreement and the waiver provision was simple and straightforward. Laurine's own lawyer inserted the waiver language and Laurine makes no claim that she did not read or understand the settlement. She does not claim that she was unaware of what effect the waiver could have on her own claims.

### III. CONCLUSION

The district court was correct in recognizing that a non-participant in an ERISA pension plan could waive rights to pension benefits. Laurine waived her right to any portion of the Death Benefit. The district court's entry of summary judgment against Laurine and in favor of Dessie is AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

This case presents an important and difficult issue that ought to be resolved precisely by statute and regulation. In the absence of such guidance, my brothers have attempted to fashion a judicial resolution that is in harmony with the statute. While I find myself in respectful disagreement with the approach adopted, I must acknowledge, at the outset, the difficulty of the task.

### A.

In my view, the starting point of our analysis must be the mandate of section 1104(a)(1)(D).[1] It requires that a plan be administered in accordance with the documents and the instruments of that plan. In my view, this statutory mandate embodies a strong federal policy that all parties—participant, trustee, and beneficiary—be able to ascertain their rights and liabilities with ease and certainty.[2] The plan at issue

---

1. Section 1104(a)(1)(D) of the Labor Title states that a plan administrator

   shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

   . . . .

   (D) *in accordance with the documents and instruments governing the plan. . . .*
   29 U.S.C. § 1104(a)(1)(D) (emphasis supplied).

2. As the House Report accompanying ERISA emphasizes:

   Descriptions of plans furnished to employees should be presented in a manner that an aver-

here fulfills that mandate quite explicitly. It provides that the beneficiary of the plan is the person named by the participant "in the last written notice received in the Administrative Office prior to the Participant's death. It shall be the responsibility of the Participant to notify in writing the Administrative Office of his choice of Beneficiary or any change in Beneficiary." *See* R.1 at Ex. 1, § 6.4. There is no question that Laurine Brown is the person who, under the terms of the plan, ought to receive the death benefit.

The remaining question—and the difficult one for us—is whether the property settlement agreement signed by both Laurine Brown and the participant, James Brown, constitutes a binding waiver of these benefits on the part of Ms. Brown. My brothers note that ERISA does not provide an explicit answer as to what constitutes a binding waiver of benefits by the beneficiary. They also note, correctly, that the issue must be decided as a matter of federal law in order to ensure that the purpose of ERISA is effectuated.

It is at the next point in the analysis that I must depart from my brothers' approach. While analogous principles of state law can indeed be helpful in filling the gaps of a federal statute, we must exercise extreme caution in employing that methodology. It is important to remember that our mission is not to fulfill the intent of the state legislature whose statute we are borrowing, but to fulfill the congressional command embodied in the language and the structure of the federal statute. Therefore, in fashioning a waiver rule, ERISA's command that a plan be administered in accordance with the plan's documents must be taken into account. Only then can we be confident that the federal policy of ensuring that all parties be aware of their rights and obligations is protected adequately. The general maxims of state in-

surance law upon which the majority relies were not, of course, fashioned with this explicit command of ERISA in mind. Therefore, we must be sure that their application is compatible with this congressional mandate. In my view, that compatibility can be accomplished by acknowledging that these general maxims of insurance law permit the renunciation of benefits only *if* such a renunciation is permitted by statute. *See O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill.App. 3d 995, 299 N.E.2d 392, 394 (1973). ERISA requires, in order to effectuate the federal policy of certainty in expectations and ease in administration, that beneficiary changes be made according to the plan's documents. Here, the documents require that the beneficiary change be made only by notification to the plan. Therefore, absent such notification by the participant, the waiver is not binding on the beneficiary.

### B.

Even if we accept the proposition that, despite the lack of conformity with the statutory scheme of ERISA, a beneficiary can be considered to have waived an interest in the plan, there remains a difficult question with respect to the intent of Laurine Brown that has not been addressed satisfactorily by either the district court or the majority. The purported "waiver" is contained in a property settlement agreement executed by the parties as part of the dissolution of a marriage. That document was designed to adjust property rights between the parties "growing out of the marital or any other relationship now or previously existing between the parties." R.1 at Ex. 5. By its own terms, then, the agreement (or "waiver") does not deal with each party's choices with respect to the disposition of property after the divorce. Indeed, it is quite plausible to read the document as establishing nothing more

age and reasonable worker participant can understand intelligently. It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in plan booklets.

H.Rep. No. 93–533, 93d Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4646.

than a waiver on the part of Ms. Brown of her right to insist on a QDRO [3] as part of the division of marital property. Indeed, such an interpretation is supported by the affidavit of Ms. Brown. R.16. She alleges that Mr. Brown made clear, both before and after the divorce, that he expected that the benefits would be payable to her. Consequently, despite the division of property at the time of divorce, Ms. Brown had, she maintains, a legitimate expectation that she would receive the benefits. Both she and Mr. Brown were aware that the beneficiary designation had not been changed.[4] At the very least, then, there is a triable issue of fact as to the intent of Ms. Brown with respect to the "waiver" that cannot be resolved on summary judgment.

Accordingly, I would reverse the judgment of the district court on the ground that the "waiver" was not effective because a change in the designation of beneficiary was never made by the participant. However, even under the approach of my brothers, there remains a triable issue of fact that precludes summary judgment.

**3.** ERISA permits a participant to alienate rights in a plan pursuant to a state-court-ordered domestic relations order that fulfills specific criteria set forth in ERISA. Such a state domestic relations order is called a "qualified domestic relations order" (QDRO). *See* 29 U.S.C. § 1056(d)(3).

**4.** The majority suggests that, if Mr. Brown wanted Ms. Brown to receive the benefits, he should have executed a new beneficiary form after the divorce. However, it must be remembered that Mr. Brown knew there already was a designation that conformed to the plan on file. He was entitled to conclude that, even if Laurine Brown had waived the benefits at the time of divorce, his decision not to change the beneficiary designation amounted to a redesignation. After all, he had been informed, at the time he made the original designation, that a change could be effected only by his coming to the office and changing the beneficiary.