[L.A. No. 31711. Mar. 19, 1984.]

LIFE INSURANCE COMPANY OF NORTH AMERICA, Plaintiff, v.
SHIRLEY JONES CASSIDY,
Defendant, Cross-complainant and Appellant;
JERRY BOCK, as Executor, etc.,
Defendant, Cross-complainant and Respondent.

**COUNSEL**

Donald J. Raich and Jerome D. Fireman for Defendant, Cross-complainant and Appellant.

Karno, Schwartz, Cobert & Schenkel and Stewart J. Schwartz for Defendant, Cross-complainant and Respondent.

**OPINION**

**REYNOSO, J.**—Appellant, Shirley Jones Cassidy, seeks a determination that she, rather than the executor of the estate of Jack Cassidy, is exclusively entitled to the proceeds of a policy insuring the life of her former husband. The issue is whether the written designation of Ms. Cassidy as beneficiary is effective in light of a subsequently entered property settlement agreement between appellant and the deceased.

We have concluded that the designation of appellant as beneficiary was superseded as of the date the parties entered into a marital settlement agreement which comprehensively disposed of all the rights and obligations between them. By terms of the agreement each waived all rights to take any property whatsoever at the death of the other unless such right was conferred by an instrument executed after the date of the agreement. The evidence produced at trial clearly shows that the fact appellant remained the named beneficiary of the subject insurance policy was not the result of an intent by the deceased to make a new gift of the benefits of the policy to his former spouse, but was contrary to his expressed intent that she be removed as beneficiary of all insurance policies on his life. We therefore affirm the judgment of the trial court.

I

The Cassidys were married in 1956. They separated in October 1974 and divorced in 1975. In April 1975 the couple entered into a comprehensive marital settlement agreement, the purpose of which was "to effect a final and complete settlement of all rights and duties of the parties with reference to each other, including their respective property and support rights, and to provide for the support and custody of and visitation with the minor children." Both parties were fully advised by their own counsel.

Jack Cassidy died in an accidental fire in December 1976. At the time of his death, appellant was named as the beneficiary of a special accident policy issued by the Life Insurance Company of North America (hereafter the INA policy). On its face the policy states that it pays a benefit of $50,000 for the accidental loss of Jack Cassidy's life. By the terms of the policy the right to change the beneficiary is reserved to the insured, without the need for consent by any named beneficiary. The policy further provides that "No change of beneficiary or assignment of interest under this policy shall be binding upon the Company unless the original or a duplicate thereof is received at the Home Office of the Company . . . ." If no designation of beneficiary is effective at the time payment is made, the policy is payable to the estate of the insured. At the time of Jack Cassidy's death, some 20 months after the marital settlement agreement was entered, no change of the beneficiary of the INA policy had been made or attempted. Appellant remained the designated beneficiary as she had been since the policy issued in 1967.

The marital settlement agreement contains several provisions which are relevant to our inquiry.

By paragraph 4 of the agreement, Ms. Cassidy released, transferred and conveyed to the deceased as his sole and separate property all of her right title and interest to certain community property being assigned to him as set forth in exhibit "C" to the agreement. That property included "All life insurance on Husband's life" and exhibit "C" contains a statement that the deceased assumed and would hold appellant harmless of any loans or liabilities with respect to the policies.[1] A separate listing contained in exhibit "A" to the agreement, shows the couple's community property to include "Cash surrender value of life insurance, less loans thereon, on the lives of each of the parties." No particular policies are specifically named or described anywhere in the agreement.

---

[1] Mr. Cassidy made an identical release and transfer of specified property, including all life insurance on Ms. Cassidy's life.

A later paragraph contains specific reciprocal waivers of the rights to act as administrator of the other spouse's estate, to seek a homestead, to inherit or receive a family allowance and to take under a will executed prior to the date of the settlement agreement. In addition the language provides that ". . . each of the parties hereto does hereby release, relinquish, quitclaim, and surrender to the other . . . all and every right as the spouse of the other *and any and all present or future claims or demands of every nature* on or against the other, or . . . the property of the other. . . ." (Italics added.) The paragraph further states that "Each of the parties hereby relinquishes and waives the right to . . . inherit from the other or rights to or in connection with any family allowance, *and the right to receive in any manner any property of the other upon the death of the other* except as a devisee, legatee or beneficiary under any last will and testament hereafter executed by either party wherein the other party may be named as a beneficiary. . . ." (Italics added.)[2]

In paragraph 13 the parties agreed to promptly execute and join in executing all documents which might be or become necessary or convenient to effectuate the provisions contained in the agreement. The paragraph concludes: "Notwithstanding the failure or refusal of either party to execute any such instrument, this Agreement shall nonetheless upon its effective date constitute a full transfer of the property herein designated to be transferred to and granted by each party."

The trial court found that the marital settlement agreement was a full and final settlement of all rights and obligations of the parties. By entering the agreement Ms. Cassidy intended to waive all right to future property interests of Mr. Cassidy, including the proceeds from the INA policy. Mr. Cassidy had fulfilled all obligations under the agreement and Ms. Cassidy had accepted all benefits to which she was entitled. As the testimony showed that Jack Cassidy did not intend to make a gift of the proceeds after the date

---

[2]Paragraph 12 provides in full:
*"Reciprocal waiver of Inheritance and Other Rights*
"Except as herein may be otherwise expressly provided, each of the parties hereto does hereby release, relinquish, quitclaim, and surrender to the other and his or her heirs, executors, administrators and assigns, all and every right as the spouse of the other and any and all present or future claims or demands of every nature on or against the other, or on or against the property of the other, it being understood that this Agreement is intended to settle the rights and obligations of the parties hereto in all respects.
"Each of the parties hereby relinquishes and waives the right to act as administrator of the estate of the other, the right to seek or obtain a homestead in the property of the other, the right to inherit from the other or rights to or in connection with any family allowance, and the right to receive in any manner any property of the other upon the death of the other except as a devisee, legatee or beneficiary under any last will and testament hereafter executed by either party wherein the other party may be named as a beneficiary or recipient of any money or property from the other."

of the settlement, the court ruled Ms. Cassidy was estopped from claiming the proceeds and that she was not entitled to receive the indemnity even though she was the formally named beneficiary.

## II

■ Appellant claims that the marital settlement agreement does not constitute a waiver of her right to receive the proceeds of the policy because it does not specifically refer to either the expectancy interest or this particular policy, and because the agreement does not explicitly revoke the designation of beneficiary. (See *Estate of Murphy* (1979) 92 Cal.App.3d 413 [154 Cal.Rptr. 859].)[3]

Our resolution of appellant's contention turns on the application of well settled principles of law. ■ The rule which is determinative was most recently confirmed by this court in *Thorp* v. *Randazzo* (1953) 41 Cal.2d 770 [264 P.2d 38] in which we held that general language in a marital settlement agreement will not be construed to include an assignment or renunciation of the expectancy interest conferred on the named beneficiary of an insurance policy or a will unless it clearly appears that the agreement was intended to deprive either spouse of such a right. ■ We find that in this case the agreement does clearly show an intent by the Cassidys to waive expectancies which may have existed at the time of the settlement.

■ When life insurance premiums are paid with community property funds, the resulting policy is an asset of the community. (*Patillo* v. *Norris* (1976) 65 Cal.App.3d 209 [135 Cal.Rptr. 210]; *Gettman* v. *City of Los Angeles Dept. of W. & P.* (1948) 87 Cal.App.2d 862 [197 P.2d 817].) The interest of the surviving spouse may not be defeated by a gift of the policy proceeds to a third party named as beneficiary without the spouse's consent. (Civ. Code, § 5125, subd. (b); *Sieroty* v. *Silver* (1962) 58 Cal.2d 799 [26

---

[3]Preliminarily appellant contends that neither waiver nor estoppel can apply to the INA policy because there is no evidence she was aware the particular policy existed. Further, since it has no cash value, she asserts it was not a life insurance policy within the meaning of the agreement. Her attention, therefore, could not have been directed to the expectancy of a future benefit from the policy and it could not have been waived. (See *Grimm* v. *Grimm* (1945) 26 Cal.2d 173, 177 [157 P.2d 841].)

We agree with the trial court, however, that this policy constituted a form of life insurance and was thus within the terms of the settlement. The agreement was intended to be a full and complete settlement of property rights between the parties. Both parties acknowledged there had been a full and complete disclosure of assets. The agreement awarded to each party all life insurance on their respective lives, but listed no policy by name or policy number. The agreement further recites that both parties "are well-known professional actors and each is capable of supporting himself and herself, respectively." Thus, while it would have been preferable for the parties to specify by name and number every insurance policy contemplated by their agreement, as the dissent urges, in this case we would frustrate their clear intent if we were to apply such a newly declared, strict rule.

Cal.Rptr. 635, 376 P.2d 563], overruled on another point in *Estate of Baglione* (1966) 65 Cal.2d 193, 197 [57 Cal.Rptr. 139, 417 P.2d 683]; *Patillo* v. *Norris, supra.*) A spouse who is placed in this position may recover his or her community share in the proceeds. (*Grimm* v. *Grimm* (1945) 26 Cal.2d 173, 175 [157 P.2d 841]; *Travelers Ins. Co.* v. *Fancher* (1933) 219 Cal. 351, 356 [26 P.2d 482].) ■ An agreement releasing the spouse's community interest in the insurance policy effectively frees the insured spouse to name or change the designated beneficiary at will.

■ It has long been recognized that these rights of a spouse to receive or recover the community share of an estate or of an insurance policy are separate and distinct from any right which may accrue to the spouse who is named as the beneficiary of a will or insurance policy. (*Estate of Crane* (1936) 6 Cal.2d 218 [57 P.2d 476, 104 A.L.R. 1101]; *Grimm* v. *Grimm, supra,* 26 Cal.2d 173; *Thorp* v. *Randazzo, supra,* 41 Cal.2d 770.) Thus, a spouse may release the community interest in an insurance policy or in the other spouse's property, without renouncing the right to receive property which is nevertheless willed or gifted, such as insurance proceeds of which the former spouse is a designated beneficiary. (*Estate of Crane, supra; Grimm* v. *Grimm, supra; Thorp* v. *Randazzo, supra.*) The spouse then has rights equivalent to those of any other designated beneficiary: an expectancy of a gift which will occur at the time of the insured's death. (*Grimm* v. *Grimm, supra,* 26 Cal.2d at pp. 175-176.)

This expectancy interest may be assigned or renounced by contract of the beneficiary, but only if the contract expressly or by necessary implication so provides. (*Grimm* v. *Grimm, supra,* 26 Cal.2d at p. 176.) With regard to marital property settlement agreements, this court has said: "Where a property settlement agreement covers *all* of the property of the parties and the wife, in accepting certain provisions for her benefit, fully releases the husband with respect to all other property, such release ordinarily would cover and include her interest as the designated beneficiary on an insurance policy; but where the language is not broad enough to encompass such an expectancy or an intent appears to exclude such rights as a present part of the settlement, the wife may still take as beneficiary if the policy so provides. [Citation.]" (*Thorp* v. *Randazzo, supra,* 41 Cal.2d at pp. 773-774, italics in original.)

■ We have repeatedly adhered to the rule that "general expressions or clauses in such agreements are not to be construed as including an assignment or renunciation of expectancies and that a beneficiary therefore retains his status under an insurance policy or under a will *if it does not clearly appear from the agreement that in addition to the segregation of the property* of the spouses *it was intended to deprive either spouse of the right*

*to take property under a will or insurance contract of the other."* (*Grimm* v. *Grimm, supra,* 26 Cal.2d at p. 176; *Thorp* v. *Randazzo, supra,* 41 Cal.2d at pp. 773-774, italics added.)

In *Thorp* v. *Randazzo, supra,* 41 Cal.2d 770, this court held the language of the property settlement agreement sufficiently broad to effect an immediate divestment of all claims that the wife might otherwise have had to the benefits of the insurance policy. The court relied upon the comprehensive nature of the agreement, the specific mention of the insurance policy at issue, the express waiver of all claims to any present or future benefits, an agreement to execute any papers necessary to effect such release, and a provision in which the parties waived any and all right to each others' estates. Language by which the wife waived " 'all claims to any benefits that she may have at present, *or which may hereafter be derived from* the following described life insurance policies . . . .' " (*Id.,* at p. 772, italics added) was crucial. "This language clearly indicates that the parties' attention had been directed to the expectancy of the insurance proceeds, and that it was intended that plaintiff waive all interest therein, present and future. Thus, 'the parties agreed that no rights were to accrue to her, even though she remained the beneficiary at the time of the husband's death.' [Citation.] In short, as in *Sullivan* v. *Union Oil Co.* [1940] 16 Cal.2d 229, 237 [105 P.2d 922], plaintiff agreed to a *present* divestment of all claims that she might otherwise have in the insurance policy." (41 Cal.2d, at p. 776.)[4]

The agreement between the Cassidys effected "a final and complete settlement of all rights and duties of the parties with reference to each other . . . ." Ms. Cassidy "release[d] transfer[red] and convey[ed]" to Mr. Cassidy "as his sole and separate property" "all of her right, title and interest" to the community property assigned to Mr. Cassidy as set forth in exhibit "C" to the agreement, including all life insurance on Mr. Cassidy's life.

[4]Other cases in which an agreement was found to relinquish expectancies include: *Meherin* v. *Meherin* (1950) 99 Cal.App.2d 596 [209 P.2d 36] (wife not entitled to insurance benefits where she waived all right to inherit under any will and to any interest in the estate of husband and the insurance policy prohibited the insured from changing the named beneficiary); *First Western Bank & T. Co.* v. *Omizzolo* (1959) 176 Cal.App.2d 555 [1 Cal.Rptr. 758] (husband not entitled to receive cash benefits arising from wife's membership in a retirement system where he had transferred to wife "all right, title and interest in and to all pension and retirement moneys and accumulations thereof" having to do with the wife's employment with San Francisco City and County schools); *Estate of Wiedemann* (1966) 239 Cal.App.2d 269 [48 Cal.Rptr. 558] (wife could not be entitled to distribution of personal property bequeathed in husband's will where property agreement contained three express waivers of the right to take under the spouse's will and further provided that any property which might be so received would be held in trust for the heirs at law of the deceased party); *Estate of Smith* (1966) 241 Cal.App.2d 205 [50 Cal.Rptr. 374] (agreement releasing all claims arising out of the marital relation and designating all property held or acquired in the future by necessary implication constituted a waiver of the wife's right to inherit the estate of her husband who died intestate).

Exhibit "A" to the agreement describes the community property as consisting only of the cash value of life insurance on the lives of the parties. Nowhere does the agreement expressly refer to benefits that might arise from the policies in the future or specify what policies are involved.

If the agreement contained no other relevant language, appellant's contention that it did not release her expectancy would prevail. The effect of the language just described is to release Ms. Cassidy's community interest and to permit Mr. Cassidy to change the beneficiary free from any community property claim of his former spouse. Such a release of the community interest does not nullify a designation of the former spouse as a beneficiary, however. ■ In applying the *Thorp* principle courts recognize that a failure to exercise the power to change the beneficiary of a policy after that power has been conferred by contract usually indicates that the insured does not wish to effect such a change, and amounts instead to a confirmation of the preexisting designation. (*Thorp* v. *Randazzo, supra,* 41 Cal.2d at p. 774.)

■ When the entire agreement in this case is considered, however—particularly the provisions of paragraph 12—it shows a further intent. Respondent aptly emphasizes the language of paragraph 12 in which each spouse releases, relinquishes, quitclaims and surrenders to the other "all and every right as the spouse of the other *and any and all present or future claims or demands of every nature* on or against the other, or . . . the property of the other. . . ." and in which each relinquishes and waives "the right to inherit from the other or rights to or in connection with any family allowance, *and the right to receive in any manner any property of the other upon the death of the other* except as a devisee, legatee or beneficiary under any last will and testament hereafter executed. . . ."

This language is sweeping in nature, and is not limited to a waiver of all rights which might arise from the marital relationship. (Cf., *Miller* v. *Miller* (1949) 94 Cal.App.2d 785 [211 P.2d 357], where the parties waived "as though the marital relationship had never existed" any rights against the other for support or inheritance.) Rather, it shows the parties intended to waive and relinquish any expectancy that was not thereafter reaffirmed, as well as to settle their community property rights.

The fact that it does not occur in the paragraph of the agreement which operates to convey the life insurance policy to Mr. Cassidy as his separate property should not be determinative. It seems clear that paragraph was intended to transfer to him only Ms. Cassidy's potential community property interest in his life insurance policies. But the language of the later paragraph explicitly states that the parties relinquish any and all present or

future claims of every nature and that they waive the right to receive in any manner any property of the other on the death of the other, except that devised by a subsequent instrument. Paragraph 13 makes this waiver immediately effective.

The renunciation of any expectancy right that might have existed at the time of the settlement agreement would not have prevented either party from later making a gift to the other. (See *Grimm* v. *Grimm, supra,* 26 Cal.2d at p. 177; *Thorp* v. *Randazzo, supra,* 41 Cal.2d at p. 777.) As previously noted, Mr. Cassidy's failure to change the beneficiary on the INA policy ordinarily would be regarded as a confirmation of the original designation. (*Estate of Crane, supra,* 6 Cal.2d at p. 221; *Thorp* v. *Randazzo, supra,* 41 Cal.2d at p. 777.)

Other evidence was presented, however, which negated any inference of donative intent on the part of appellant's former husband. Ronald Karno, Mr. Cassidy's accountant and business manager, testified that he was employed by Mr. Cassidy in December 1974. Between January and May 1975 he received records and insurance policies from the person who had previously managed the business affairs of both Cassidys. In July 1975 Mr. Cassidy told Karno that he wanted Ms. Cassidy removed as the beneficiary of all life insurance policies. Karno and his employees prepared the necessary papers on all accounts contained in a folder marked "life insurance" which he had received from the prior manager. The policy issued by INA was not included in that folder and, consequently, no change of beneficiary was prepared. Although he issued checks in payment of the premium, Karno did not see the policy itself. Thus he did not become aware that it carried a benefit payable on death until after the fatal fire. To his knowledge, the INA policy was the only life insurance policy naming Ms. Cassidy as beneficiary at the time of Mr. Cassidy's death.

Appellant objected to the admission of this testimony as hearsay that does not come within any exception to the rule. The trial court, however, correctly ruled that the testimony was admissible pursuant to section 1250 of the Evidence Code, which permits introduction of an out of court statement of the declarant's then existing state of mind to explain acts or conduct of the declarant. Under the facts of this case, the testimony was relevant to establish that appellant remained the beneficiary designated under the INA policy only because of inadvertence and that Mr. Cassidy did not intend to confirm a gift of the proceeds to her. (See *Estate of Aiello* (1980) 106 Cal.App.3d 669, 676 [165 Cal.Rptr. 207].) This testimony was corroborated by documentary evidence showing that Mr. Cassidy had effected changes of beneficiary with regard to other life insurance policies, which was admitted without objection.

This evidence, together with the intent that may be inferred from the marital settlement agreement, clearly supports the trial court's finding that Mr. Cassidy did not intend to make a gift of the proceeds of the INA policy to appellant. Since appellant relinquished the expectancy created by the prior designation at the time when she entered the marital settlement agreement, and has failed to show that the insured made a new gift to her after that time, she is not entitled to recover the proceeds notwithstanding the designation on file with the Life Insurance Company of North America.

The judgment is affirmed.

Mosk, J., Kaus, J., Broussard, J., and Richardson, J.,* concurred.

**BIRD, C. J.**—I respectfully dissent.

There is no basis for the majority's conclusion that Ms. Cassidy waived her right as beneficiary to the proceeds of Mr. Cassidy's life insurance policy by consenting to the terms of the property settlement agreement. Further, the majority's conclusion that the evidence produced at trial "clearly shows" Mr. Cassidy's intent to remove Ms. Cassidy as a beneficiary under that policy is not borne out by the record.

A former spouse's claim to insurance policy proceeds based upon her status as a named beneficiary is wholly distinct from any claim she may make based upon her prior marital relationship. (*Grimm* v. *Grimm* (1945) 26 Cal.2d 173, 175 [157 P.2d 841]; *Thorp* v. *Randazzo* (1953) 41 Cal.2d 770, 773 [264 P.2d 38].) Consequently, she may waive her right to a community interest in an insurance policy yet remain a beneficiary who is fully entitled to the proceeds of the policy upon the death of the insured. (*Grimm, ibid.; Thorp, supra,* at pp. 773-774.)

"This court and other courts have therefore applied to property settlement agreements the rule that *general* expressions or clauses in such agreements are *not* to be construed as including an assignment or renunciation of expectancies and that a beneficiary therefore retains [her] status under an insurance policy . . . if it does not *clearly appear* from the agreement that in addition to the segregation of the property of the spouses it was intended to deprive either spouse of the right to take property under . . . an insurance contract of the other." (*Grimm, supra,* 26 Cal.2d at p. 176, italics added, citing *Sandrosky* v. *Prudential Ins. Co.* (1933) 217 Cal. 578 [20 P.2d 325].) Accordingly, "expectancies under . . . an insurance policy are regarded as

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

waived *only* when it appears that the attention of the parties was *directed to such expectancies* and their intention to disclaim future rights that might develop from such expectancies was *made clear* in the contract." (*Grimm, supra,* at p. 177, italics added, citing *Estate of Crane* (1936) 6 Cal.2d 218 [57 P.2d 476, 104 A.L.R. 1101].)

It is precisely the strict and unequivocal language of these standards which leads to the conclusion that the majority err.

The majority first conclude that "in this case the agreement does clearly show an intent by the Cassidys to waive expectancies which may have existed at the time of the settlement." (Majority opn., *ante,* p. 605.) A review of the terms of the property settlement agreement executed by the Cassidys leads to the opposite conclusion.

None of the three provisions in the agreement which pertain to the release of property claims of the former spouses against each other is sufficiently specific to effectuate a waiver. Paragraph E broadly states that "[t]he purpose of this Agreement is to effect a final and complete settlement of all rights and duties of the parties with reference to each other, including their respective property and support rights . . . ."

Similarly, the language of Paragraph 12, although "sweeping in nature," is still general: "Except as herein may be otherwise expressly provided, each of the parties hereto does hereby release, relinquish, quitclaim, and surrender to the other and his or her heirs, executors, administrators and assigns, all and every right as the spouse of the other and any and all present or future claims or demands of every nature on or against the other, or on or against the property of the other, it being understood that this Agreement is intended to settle the rights and obligations of the parties hereto in all respects. [¶] Each of the parties hereby relinquishes and waives . . . the right to inherit from the other or rights to or in connection with any family allowance, and the right to receive in any manner any property of the other upon the death of the other except as a devisee, legatee or beneficiary under any last will and testament hereafter executed by either party wherein the other party may be named as a beneficiary or recipient of any money or property from the other."

The third provision contains broad language effectuating a general transfer of all the rights and property designated in the agreement. Paragraph 13 states in relevant part: "Notwithstanding the failure or refusal of either party to execute any [documents or instruments which are necessary to vest the respective titles and estates in the parties to the property set forth in the agreement], this Agreement shall nonetheless upon its effective date consti-

tute a full transfer of the property herein designated to be transferred to and granted by each party."

The rule stated in *Grimm, supra,* 26 Cal.2d at page 176, that "general expressions or clauses in such agreements are not to be construed as including an assignment or renunciation of expectancies," precludes any of these broad provisions from being interpreted as a waiver of beneficiary rights.

Further, the provisions specifying the community property which is subject to transfer under the agreement fail to identify the future expectancies in the proceeds of the insurance policy. Exhibit "A," which lists all of the community property, refers to the "[c]*ash surrender value* of life insurance, less loans thereon, on the lives of each of the parties." (Italics added.) Exhibit "C," which specifies the community property being transferred to deceased as his separate property, includes "[a]ll life insurance on Husband's life." Neither provision identifies the specific life insurance policy. In addition, neither provision contains language that in any way denotes the proceeds of the policy as opposed to its cash surrender value.

I am completely unconvinced that any of these provisions indicate "that the attention of the parties was directed to [the life insurance] expectancies and [that] their intention to disclaim future rights that might develop from such expectancies was made clear in the contract" (*Grimm, supra,* 26 Cal.2d at p. 177).

*Thorp, supra,* 41 Cal.2d 770 refutes the majority's interpretation of the terms of the Cassidys' agreement. In *Thorp,* the property settlement agreement contained language by which the wife waived "'all claims to any benefits that she may have at present, or which may hereafter be derived from the following described life insurance policies . . . .'" (*Id.,* at p. 772.) Just as crucial as the reference to future interests was the express application of the waiver to any interests in the *specifically identified* life insurance policies. In marked contrast, the Cassidys' agreement did not specifically identify the life insurance policy nor did it clarify that the waiver provisions applied to both present interests and future expectancies under that policy.

The other cases cited by the majority fail to support their interpretation of the Cassidys' agreement. In *Meherin* v. *Meherin* (1950) 99 Cal.App.2d 596, 597 [222 P.2d 305], the language by which the wife was found to have waived her right as a beneficiary released "'all the interest in and to that certain insurance policy with the Metropolitan Life Insurance Company, bearing the number 918996-7-C'" and granted, assigned and sold to the

husband all of the wife's "'right, title and interest in and to said policy and the interest and benefits therein.'" Again, compared to the Cassidys' provisions, this waiver language is specific in its reference to both the life insurance policy and the expectancy in "benefits" of that policy.

Similarly, in *First Western Bank & T. Co.* v. *Omizzolo* (1959) 176 Cal.App.2d 555, 557 [1 Cal.Rptr. 758], the material clause of the property settlement agreement at issue was one by which the husband transferred to the wife, as her separate property, "'all right, title and interest in and to all pension and retirement moneys and accumulations thereof growing out of or having to do with the work and employment of said Wife as a teacher in the School Department of the City and County of San Francisco, State of California.'" The court determined that the husband had waived his beneficiary rights to the wife's retirement fund. (*Id.*, at pp. 562-563.) Again, the retirement fund in *First Western Bank,* like the life insurance policies in *Thorp* and *Meherin,* was *specifically identified* in the property settlement agreement.

*Estate of Smith* (1966) 241 Cal.App.2d 205 [50 Cal.Rptr. 374] and *Estate of Wiedemann* (1966) 239 Cal.App.2d 269 [48 Cal.Rptr. 558] are also factually distinguishable in that neither involves a former spouse's independent status as a designated beneficiary. In *Smith,* the waiver language by which the parties "'waive[d], release[d] and relinquishe[d] to the other all claims which each may now have, or might hereafter otherwise acquire against the other, as husband or wife, or otherwise, arising out of the marital relation . . .'" (241 Cal.App.2d at p. 208) was found to preclude the wife from any inheritance by succession from her former husband's estate. (*Id.*, at pp. 210-212.) Because her claim was based solely upon her right as a former spouse, and not upon any independent right as a named beneficiary, the express waiver of all present and future claims arising out of the marital relationship was sufficiently specific.

In *Wiedemann, supra,* 239 Cal.App.2d 269, a former wife was found to have waived any claim to property bequeathed to her by her husband's will which had been executed prior to the property settlement agreement. The agreement contained language similar to that in *Smith*—"'each party hereto waives any right to inherit from the estate of the other party hereto, either by will or otherwise . . . .'" (*Id.*, at pp. 270-271.) The court included among the reasons for its decision the fact that the agreement's provisions "clearly, explicitly and unambiguously indicate an intention on [wife's] part to renounce her rights under decedent's will." (*Id.*, at p. 274.) The court held that those explicit provisions, and the fact that the wife in that case was aware of the bequests in the will at the time the agreement was executed, provided "a clear indication that the parties' attention had been di-

rected to the expectancies under the will and that they intended that [the wife] waive future rights which might develop from such expectancies." (*Ibid.*)

I fail to see how these factually distinguishable cases support the majority's analysis of the general waiver language found in this agreement. These cases only reinforce the conclusion that Ms. Cassidy did not waive her expectancy as a beneficiary because the provisions of the agreement do *not* adequately demonstrate "that the attention of the parties was directed to [the life insurance] expectancies" (*Grimm, supra,* 26 Cal.2d at p. 177).

It is uncontested that the designation of Ms. Cassidy as the beneficiary of the life insurance policy was never changed. Ordinarily, an insured's failure to change a beneficiary designation confirms the original designation. (Majority opn., *ante,* p. 609; *Thorp, supra,* 41 Cal.2d at p. 777.) This rule would promote predictability and reduce opportunities for litigation.

The majority refuse to apply this rule on the basis of their conclusion that Mr. Cassidy did not intend to make a gift to Ms. Cassidy of the proceeds of that policy. However, the only extrinsic evidence the majority identify to support their position is the hearsay evidence offered by Ronald Karno, Mr. Cassidy's accountant and business manager at the time the agreement was executed. Karno testified, over objection, that Mr. Cassidy had told him on July 22, 1975, "that he wanted [Ms. Cassidy] removed as the beneficiary on all of his life insurance policies." Karno explained that he followed these directions by executing change-of-beneficiary forms for all of Mr. Cassidy's other life insurance policies but had inadvertently failed to change the beneficiary designation of this policy.

This evidence cannot be dispositive of the issue here—did Mr. Cassidy intend at the time of his death that Ms. Cassidy not be the beneficiary of this policy? There is nothing in the record indicating, one way or another, what Mr. Cassidy's thoughts or intentions were as to the designation of a beneficiary after July of 1975. The record only reflects that his hearsay statement was followed by a year and a half during which no change or attempt to change the beneficiary designation was made. Both Karno and Mr. Cassidy had many months in which to discover the "error," if such were the case, and to designate a different beneficiary. Many months passed in which Mr. Cassidy could have rethought the position reflected in his alleged hearsay statement and decided to leave the beneficiary designation unchanged.

What is most significant is that Ms. Cassidy remained the designated beneficiary. Mr. Cassidy's executor failed to offer *any* evidence as to Mr.

Cassidy's intentions during the lengthy period between July of 1975 and Mr. Cassidy's death in December of 1976. Without such evidence, the rule that failure to designate a new beneficiary demonstrates the policy holder's intention that the named beneficiary receive the proceeds of the policy should apply.

As the designated beneficiary, Ms. Cassidy is entitled to the proceeds of Mr. Cassidy's life insurance policy. She did not clearly waive her right to that expectancy by consenting to the terms of the property settlement agreement. Further, there is insufficient evidence to overcome the rule that a policy holder's failure to change the beneficiary designation confirms the original designation. That rule should govern distribution of the policy proceeds here.

Grodin, J., concurred.