[No. G004590. Fourth Dist., Div. Three. Dec. 17, 1987.]

ALEXANDRA SNYDER, as Executrix, etc., Plaintiff and Respondent, v.
SHIRLEY SNYDER, Defendant and Appellant.

## COUNSEL

McKay, Byrne, Graham & Van Dam, James S. Van Dam and Michael Louis Friedman for Defendant and Appellant.

Espinosa & Espinosa and Robert A. Espinosa for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—Shirley Snyder, former wife of decedent Gordon Snyder, appeals a declaratory judgment rendered in favor of Gordon's widow, Alexandra. We affirm.

Shirley and Gordon Snyder were married in 1964. One son, Michael, was born in 1965. Gordon also adopted Carrie, Shirley's daughter from a prior marriage.

In 1971 Gordon named Shirley as beneficiary of a defined contribution savings plan with Rockwell International, his employer. The parties separated in 1976, and on January 11, 1979, pursuant to stipulation in open court, an interlocutory judgment of dissolution of marriage was entered. The Rockwell savings plan, the subject of this appeal, was awarded to Gordon as his separate property.

Gordon married Alexandra on December 1, 1979. He executed a will on October 19, 1981, and died the following May. He had never changed the

beneficiary designation of the Rockwell savings plan which, at the time of his death, was worth approximately $82,000.[1]

The will acknowledged Gordon's marriage to Alexandra and his prior marriage to Shirley,[2] and also disinherited his adopted daughter, Carrie. It provided for all of his personal property, and his 50% interest in his home, to be divided equally between Alexandra and his son, Michael. The will did not specifically mention the Rockwell savings plan but a residuary clause left all other property to Alexandra.[3]

Alexandra, as executrix of Gordon's estate, filed an action for declaratory relief against Rockwell and Shirley. Her first amended complaint[4] sought a declaration that the savings plan was the property of the estate.

At trial Shirley testified she and Gordon never discussed the savings plan after entry of the interlocutory judgment. Nor is there evidence Gordon instructed Rockwell to change the beneficiary designation.[5]

---

[1] Contributions to the savings plan between 1979 and 1982, of course, constituted the community property of Gordon and Alexandra.

[2] The first article of Gordon's will provided: "I declare that I am married and my wife's name is ALEXANDRA SNYDER. I FURTHER DECLARE THAT WE HAVE NO CHILDREN, LIVING OR DECEASED OF THIS MARRIAGE. I DECLARE THAT I HAVE BEEN PREVIOUSLY MARRIED TO SHIRLEY ANN SNYDER, that marriage having terminated in [d]ivorce. I further declare that I have two children of that marriage[,] namely, MICHAEL SNYDER[,] a son, and CARRIE LYNN SNYDER, a daughter."

[3] The fifth article of the will provided, in part: "I hereby give, devise and bequeath all of the residue and remainder of my estate of whatever location or description of which I die possessed, or which I have power of disposition over, or any interest whatsoever, real property, personal property or mixed, whatsoever kind or character, to my wife ALEXANDRA SNYDER. . . ."

[4] Alexandra's original complaint also named Metropolitan Life Insurance Co. and Prudential Insurance Company of America as defendants. The trial court entered summary judgment declaring Shirley to be the sole beneficiary of two insurance policies issued by Metropolitan and Prudential, as well as the Rockwell savings plan. On appeal, this court, in an unpublished opinion, concluded the trial court had correctly determined there was no triable issue as to whether Shirley was entitled to the proceeds of the insurance policies: The parties had stipulated Shirley would remain sole beneficiary so long as she had the right to receive spousal support, and Shirley's declaration confirmed she was entitled to and receiving spousal support when Gordon died. But, having concluded summary judgment was improper as to the savings plan, we reversed the judgment as to that claim and remanded the matter with directions to enter judgment on the pleadings for Shirley and Rockwell.

Further, having noted Gordon's estate, not Alexandra, was the proper plaintiff to sue for right to possession, we granted Alexandra leave to amend her complaint to allege a cause of action in her capacity as executrix.

[5] In support of Alexandra's opposition to Shirley's motion for summary judgment, Alexandra's lawyer submitted a declaration stating Gordon had applied for a change of beneficiary but Rockwell had not yet acted on the request.

Rockwell's counsel also submitted a declaration. It alleged Rockwell had no record of any attempt by Gordon to change the beneficiary.

The trial court ruled in Alexandra's favor. Its formal order states: "Evidence having been taken and argument having been heard and submitted to the court, the court concludes, and orders, that Rockwell International Corporation, as the holder of the proceeds of the Rockwell Savings Plan provided decedent Gordon W. Snyder, is ordered to remit those proceeds to the executrix for the estate of Gordon W. Snyder. The court finds that Shirley Snyder, the decedent's prior spouse, has no right, title or interest in the savings plan proceeds. . . . [¶] The court's letter of ruling dated June 23, 1986 is incorporated herein by reference thereto."[6]

In reaching its conclusion, the trial judge relied on *Life Insurance Co. of North America* v. *Cassidy* (1984) 35 Cal.3d 599 [200 Cal.Rptr. 28, 676 P.2d 1050]. The thrust of Shirley's appeal is the court erred in interpreting and applying *Cassidy*.

In *Cassidy,* the appellant sought a judicial determination she was entitled, as the named beneficiary, to benefits payable under an accidental death policy insuring the life of her former husband. Our Supreme Court affirmed the trial court's ruling the parties' marital settlement agreement entered into 20 months earlier had fully and finally settled all their rights and obligations and that by signing the agreement, the appellant intended to waive her right to the insurance proceeds. Further, in view of evidence the decedent had no intention of making a gift of the insurance proceeds after the settlement, appellant was estopped from claiming the proceeds even though she was the named beneficiary.

The *Cassidy* court recalled its decision in *Thorp* v. *Randazzo* (1953) 41 Cal.2d 770 [264 P.2d 38] where it was held "general language in a marital settlement agreement will not be construed to include an assignment or renunciation of the expectancy interest conferred on the named beneficiary of an insurance policy or a will unless it clearly appears that the agreement was intended to deprive either spouse of such a right." (*Life Insurance Co. of North America* v. *Cassidy, supra,* 35 Cal.3d at p. 605.) The court then concluded "the [subject] agreement does clearly show an intent by the Cassidys to waive expectancies which may have existed at the time of the settlement." (*Ibid.*)

The facts in *Cassidy* are, of course, quite different than those presented here. There, the dispute concerned proceeds of an insurance policy which, until Mr. Cassidy's death, constituted an expectancy interest only. In our case, the savings plan represented a property interest in existence at the time

---

[6]Although requested, the letter of ruling is not included in the clerk's transcript. A copy, however, is appended to Shirley's opening brief.

the community estate was divided. And that interest was awarded to Gordon as his separate property.

Further, while Shirley's brief makes reference to a marital property settlement agreement between Gordon and herself, there is no such document. Indeed, the Snyders stipulated to their property division in open court; thus, the *Cassidy* settlement agreement has no counterpart here. Shirley would have us conclude *Cassidy's* holding therefore does not apply because there is no language from which the parties' intent may be discerned. Not so. In fact, our task is easier than that undertaken by the *Cassidy* court: We need not determine if there is sufficient "all encompassing" or "comprehensive" language in the parties' "marital settlement agreement" to constitute a "waiver" of Shirley's interest in the plan. The parties' stipulation alone demonstrates Shirley relinquished her ownership interest in the savings plan when it was awarded to Gordon.

But this fact, without more, does not translate to victory for Alexandra. Indeed, although unlikely, Gordon *could* have intended that Shirley retain her beneficiary status. "[The] rights of a spouse to receive or recover the community share of an estate or of an insurance policy are separate and distinct from any right which may accrue to the spouse who is named as the beneficiary of a will or insurance policy. [Citations.] Thus, a spouse may release the community interest in an insurance policy or in the other spouse's property, without renouncing the right to receive property which is nevertheless willed or gifted, such as insurance proceeds of which the former spouse is a designated beneficiary. [Citations.]" (*Life Insurance Co. of North America* v. *Cassidy, supra,* 35 Cal.3d at p. 606.)

The *Cassidy* court acknowledged "[t]he renunciation of any expectancy right that might have existed at the time of the settlement agreement would not have prevented either party from later making a gift to the other. [Citations.] As previously noted, Mr. Cassidy's failure to change the beneficiary on the INA policy *ordinarily* would be regarded as a confirmation of the original designation. [Citations.] [¶] Other evidence was presented, however, which negated any inference of donative intent on the part of appellant's former husband." (*Id.,* at p. 609, italics added.) "*This evidence, together with the intent that may be inferred from the marital settlement agreement, clearly supports the trial court's finding that Mr. Cassidy did not intend to make a gift of the proceeds of the INA policy to appellant.* Since appellant relinquished the expectancy created by the prior designation at the time when she entered the marital settlement agreement, *and has failed to show that the insured made a new gift to her after that time,* she is not entitled to recover the proceeds notwithstanding the designation

on file with the Life Insurance Company of North America." (*Id.,* at p. 610, italics added.)

Here, no testimony was offered with respect to Gordon's intention to change the beneficiary designation. There is, however, documentary evidence of his intent to supersede the original beneficiary designation: his will. Furthermore, we can see no reason why Gordon would have wanted to make a gift to Shirley of the plan's proceeds. From a practical standpoint, any desire to retain his former wife as beneficiary could have been implemented by submitting a postdivorce designation to that effect. The *Cassidy* court alluded to this requirement when it noted the appellant had failed to show the decedent had made a "new gift" to her after the marital settlement agreement was executed.[7]

Judgment affirmed. Respondent to receive costs.

Wallin, Acting P. J., and Crosby, J., concurred.

---

[7] In this regard, see Government Code section 21205 providing for automatic revocation of a beneficiary designation made by a member of the Public Employees' Retirement System following marriage, dissolution of marriage, annulment of marriage, birth of a child, or adoption of a child.