**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LIFE INSURANCE COMPANY OF NORTH
AMERICA, a Pennsylvania
corporation,
*Plaintiff,*

v.

GLORIA IRENE ORTIZ, an individual,
*Defendant-Appellant,*

GRACIELA ELENA ORTIZ, an
individual,
*Defendant-Appellee.*

No. 07-55308

D.C. Nos.
CV-05-07347-MLR
CV-05-08117-MLR

LIFE INSURANCE COMPANY OF NORTH
AMERICA, a Pennsylvania
corporation; RELIANCE STANDARD
LIFE INSURANCE COMPANY,
*Plaintiffs,*

v.

GLORIA IRENE ORTIZ, an individual,
*Defendant-Appellant,*

GRACIELA ELENA ORTIZ, an
individual,
*Defendant-Appellee,*

and

J.J.O., a minor; JAVIER A. ORTIZ,
Sr.; GRACIELA CASTANO ORTIZ,
*Defendants.*

No. 07-55331

D.C. Nos.
CV-05-08117-R
CV-05-07347-R

OPINION

9791

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
June 4, 2008—Pasadena, California

Filed August 1, 2008

Before: Alex Kozinski, Chief Judge, Ruggero J. Aldisert,*
and Dorothy W. Nelson, Circuit Judges.

Per Curiam Opinion;
Dissent by Chief Judge Kozinski

---

*The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

**COUNSEL**

Robert A. Foster, II, Robert A. Foster II Law Offices, Irvine, California, for the defendant-appellant.

John V. Gaule, Oddenino & Gaule, Arcadia, California, for the defendant-appellee.

## OPINION

PER CURIAM:

This case involves an interpleader action over the life insurance proceeds for an officer killed in the line of duty. Although Luis Gerardo Ortiz's ex-wife, Gloria Ortiz, was designated as beneficiary, Graciela Ortiz argues that divorce extinguished Gloria Ortiz's expectancy interest. The district court awarded the life insurance proceeds to the estate for intestate division among Graciela Ortiz and the decedent's two sons. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 1998, Luis Gerardo Ortiz ("Jerry") designated his wife, Gloria Ortiz ("Gloria"), as the beneficiary of his life insurance policies with Life Insurance Company of North America and Reliance Standard. Jerry and Gloria separated in March 2002, and the Superior Court of California entered a Judgment on Reserved Issues in their divorce on December 15, 2004. The Judgment on Reserved Issues awarded "[a]ll right, title and interest in any and all of Petitioner's retirement/pension, 457(b) plans, 401(k) plans or other deferred benefits in [Jerry]'s name" to Jerry. The document also included a pre-printed notice indicating that "[i]t does not automatically cancel the rights of a spouse as beneficiary on the other spouse's life insurance policy."

In February of 2005, Jerry's divorce attorney sent an exit letter advising him to "reaffirm and/or change any beneficiaries on any . . . insurance policies." The attorney also spoke with Jerry after the divorce judgment issued and urged him to

change the beneficiaries of his life insurance policies immediately. Jerry indicated that "he intended to go and look into those policies" and "again assured [her] that he would." Despite these assurances, Jerry did not attempt to change the written beneficiary designations on file with Life Insurance Company of North America and Reliance Standard.[1]

Jerry married Graciela Ortiz ("Graciela") on May 28, 2005. Jerry did not work May 28-31 because of the marriage and the honeymoon. On June 24, 2005, Jerry died as a result of a gunshot wound to the head while on duty. The term life insurance payment that funded Jerry's coverage at the time of death was withdrawn from his May paycheck. The life insurance companies deposited life insurance and accidental death benefits totaling $518,483.13 with the clerk of the court.

The life insurance companies instituted an interpleader action naming Gloria and Graciela as defendants. The district court judge found that the life insurance policies became Jerry's separate property at the time of his divorce from Gloria. The judge also found that Jerry expressed an intent to name Graciela as his beneficiary, but he died intestate before he could make that change. Accordingly, the judge awarded the proceeds of the policies to the estate to be split equally between Graciela and Jerry's two sons. The district court denied a motion to stay the judgment pending appeal, but this court granted an unopposed application for an emergency stay order.

## JURISDICTION AND STANDARD OF REVIEW

The district court derived jurisdiction from 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. We

---

[1]Both companies required written notice to change the designated beneficiary.

find jurisdiction over this appeal of the final judgment pursuant to 28 U.S.C. § 1291.

The interpretation of a divorce judgment is a matter of law, which we review de novo. *Lowenschuss v. Selnick*, 170 F.3d 923, 929 (9th Cir. 1999).

## *DISCUSSION*

## I.   DIVORCE JUDGMENT

**[1]** Under California law, we look to the language of the property settlement agreement to determine whether the agreement extinguishes the expectancy interests of life insurance beneficiaries. *Life Ins. Co. of N. Am. v. Cassidy*, 676 P.2d 1050, 1053 (Cal. 1984). "[G]eneral language in a marital settlement agreement will not be construed to include an assignment or renunciation of the expectancy interest conferred on the named beneficiary of an insurance policy or a will unless it clearly appears that the agreement was intended to deprive either spouse of such a right." *Id*. A property settlement covering all property and releasing all claims may be found to include a life insurance expectancy interest, "but where the language is not broad enough to encompass such an expectancy . . . the wife may still take as beneficiary if the policy so provides." *Thorp v. Randazzo,* 264 P.2d 38, 40 (Cal. 1953).

**[2]** We find that the language of the divorce judgment between Jerry and Gloria Ortiz did not extinguish Gloria's expectancy interest in Jerry's life insurance proceeds. The text of the relevant Judgment on Reserved Issues did not contain a single direct reference to life insurance policies. Although one could read the provision awarding "[a]ll right, title and interest in any and all of Petitioner's retirement/pension, 457(b) plans, 401(k) plans or other deferred benefits" to encompass life insurance policies, it was not clearly apparent that the provision encompassed beneficiary status. Unlike in

*Thorp*, the judgment did not "clearly indicate[ ] that the parties' attention had been directed to the expectancy of the insurance proceeds, and that it was intended that plaintiff waive all interest therein, present and future." 264 P.2d at 41. Thus the divorce judgment was insufficient to waive beneficiary status because it is not clear from the text of the agreement that such status was contemplated and intentionally waived.

Additionally, the context of the Judgment on Reserved Issues suggests that the parties did not extinguish beneficiary status. The document contained a pre-printed notice that "[i]t does not automatically cancel the rights of a spouse as beneficiary on the other spouse's life insurance policy." This notice, while not dispositive, provided information regarding the additional steps required to alter life insurance beneficiaries. We can infer that Jerry and his attorney did not expect the judgment to terminate Gloria's beneficiary status because Jerry's attorney advised him to "reaffirm and/or change any beneficiaries on any . . . insurance policies" in her exit letter. Jerry also indicated that he understood the necessity of changing his named beneficiary when he spoke with his attorney in February. The pre-printed notice on the judgment form and the record evidence regarding Jerry's state of mind support our conclusion that the divorce judgment did not extinguish Gloria's expectancy interest.

We distinguish this case from *Meherin v. Meherin*, 222 P.2d 305 (Cal. Ct. App. 1950). In *Meherin*, a property settlement agreement terminated a wife's expectancy interests by assigning "all of her right, title and interest in and to said policy" and further requiring her "to execute any instrument or documents required by the husband or the [ ] Insurance Company to carry out the intention of this paragraph." *Id*. at 306. Unlike the Ortiz divorce judgment, the agreement in *Meherin* specifically referenced the insurance policy. *Id*. The agreement also referenced the documentation required by the husband or the insurance company to change the beneficiary and

the wife's interests in post-death recovery. *Id.* Finally, the agreement in *Meherin* was a complete settlement whereas the Ortiz document was only a Judgment on Reserved Issues. The *Meherin* agreement clearly indicated that the parties directed their attention to expectancy interests and intended to waive those interests; the Ortiz judgment did not.

**[3]** For the foregoing reasons, we find that Gloria's expectancy interest survived the divorce. In light of this finding, we hold that the district court erred when it relied on Jerry's post-divorce intent to terminate Gloria's expectancy interests. In both *Cassidy* and *Thorpe*, the court only looked to the decedent's post-divorce intent *after* it determined that the language of the divorce decree terminated the expectancy interest. In *Cassidy*, the agreement "waive[d] and relinquish[ed] any expectancy that was not thereafter reaffirmed," and the court looked to evidence of post-divorce intent to determine whether the failure to change the beneficiary designation constituted a reaffirmation of the expectancy interest. 676 P.2d at 1055-56. In *Thorpe*, the waiver of future interests in life insurance policies and post-death benefits was explicit, and the court considered intent for the limited question of whether the failure to change the beneficiary amounted to a post-divorce confirmation of the designation. 264 P.2d at 41-42. This case is distinguishable from both *Cassidy* and *Thorpe*, thus the district court's reliance on post-divorce intent was misplaced.

## II.  CHANGE OF BENEFICIARY

**[4]** As a general rule, California requires a change to a beneficiary designation to be made in accordance with the terms of the policy. "[I]f it is not, no change is accomplished, unless whatever occurred in that respect comes within one of more of the three exceptions to the rule." *Cook v. Cook*, 111 P.2d 322, 328 (Cal. 1941). The three exceptions are (1) when the insurer waives strict compliance with its own rules regarding the change; (2) when it is beyond the insured's power to comply literally with the insurer's requirement; or (3) when the

insured has done all that he could to effect the change but dies before the change is actually made. *Id.*

**[5]** Only the third exception is potentially applicable to this case. The Supreme Court of California interpreted this third exception, stating:

> We think that where the insurer is not contesting the change the rule is not to [be] applied rigorously and where the insured makes every reasonable effort under the circumstances, complying as far as he is able with the rules, and there is a clear manifestation of intent to make the change, which the insured has put into execution as best he can, equity should regard the change as effected.

*Pimentel v. Conselho Supremo de Uniao Portugueza do Estado da California*, 57 P.2d 131, 134 (Cal. 1936). Thus, one's intent to change a beneficiary designation must be clearly manifested and put into motion as much as practicable. *See Manhattan Life Ins. Co. v. Barnes*, 462 F.2d 629, 633 (9th Cir. 1972) ("California demands that substantial steps be taken to actually change a beneficiary before the formal requirements of the contract may be ignored.").

**[6]** In this case, both insurance companies required written notification of change of beneficiary and Jerry took no steps toward providing such notification. Jerry's lawyer stressed the necessity of changing the designation in both her exit letter and an informal meeting. Jerry indicated that he understood and intended to change the designation; however, he took no action in the four months between the finalization of the divorce and his death. At any point following the finalization of his divorce, Jerry could have named Graciela, his two sons, or anyone else as the beneficiary of his policies. Jerry's inaction does not amount to substantial steps to change his beneficiary; therefore we find that the original designation of Gloria

Ortiz remained valid. Thus the district court erred by relying on intent to circumvent a valid beneficiary designation.

## III.  COMMUNITY PROPERTY SHARE

**[7]** Although we find that the beneficiary designation naming Gloria was valid, we note that Graciela retains a community property interest of 6.45% of the life insurance proceeds.[2] This percentage represents a one-half interest in the four days' earnings that funded the final thirty-one day term of Luis's term life insurance.

### *CONCLUSION*

We REVERSE and REMAND for the district court to award 93.55% of the disputed life insurance proceeds to Gloria Ortiz and 6.45% to Graciela Ortiz.

---

KOZINSKI, Chief Judge, dissenting:

The majority reaches a senseless, unjust and cruel result by awarding half a million dollars to the former wife of a peace officer felled in the line of duty, leaving the officer's widow and children out in the cold. We don't need to do this. The law, the facts, the equities, common sense and the district court's findings all support the just result here: giving the proceeds of the service life insurance policies meant to protect the officer's loved ones to the people he actually loved.

The majority pettifogs its way through the California caselaw, finding ways to distinguish this case and that, but loses sight of the key facts that support the district court's judgment: Gloria Ortiz—the woman who will get the windfall

---

[2]Gloria conceded this issue at oral argument, so we do not analyze it further.

under the majority's stilted reasoning—had given up all interest in the policies at the time of her divorce from Deputy Ortiz. She had no interest in the policies anyway because they were for *term* insurance and thus built up no cash value. Every month's coverage was paid for by premiums deducted that month from Deputy Ortiz's paycheck. After the divorce, Gloria had no interest in the deputy's income. To award Gloria the proceeds, one must believe that Deputy Ortiz meant to spend a chunk of his salary buying insurance for the benefit of his estranged wife instead of his wife and sons.

Breadwinners buy life insurance to provide financial security for their dependents. Deputy Ortiz had no reason to provide financial security for a woman who wasn't his dependent and whom, by all accounts, he despised. Which is what the district court found after a trial. It's true that Deputy Ortiz had not yet changed the beneficiary designation on his policies when he was killed. But the delay wasn't very long, and certainly doesn't compel a finding that Deputy Ortiz meant to leave Gloria a pot of gold and his wife and sons a lump of coal.

The delay was, in any event, entirely understandable. While the deputy could have changed the beneficiary designation after his divorce in February, he prudently waited for Graciela to become his wife. The two wedded at the end of May and, after a short honeymoon, Deputy Ortiz returned to work. He didn't rush to change the beneficiary designation on his policies, probably because he didn't imagine he'd be killed three weeks later. Deputy Ortiz, like the rest of mankind, must have believed that he had plenty of time. Imprudent, perhaps, but very human. Who amongst us hasn't put off dealing with wills or other unpleasantries that remind us of our mortality? Is this the kind of mistake that should deprive Deputy Ortiz's wife and children of the insurance he maintained for their security? Surely not—at least not in California today.

The California courts have dealt with very similar situations for over half a century and have invariably awarded pol-

icy proceeds as intended by the decedent. *Thorp* v. *Randazzo*, 264 P.2d 38 (Cal. 1953), is typical. The decedent was divorced from his former wife who, through a consent decree, gave up "all claims to any benefits that she may have at present, or which may hereafter be derived from the . . . life insurance policies upon the life of [the husband]." *Id.* at 39. The former wife was the beneficiary of two policies; the husband changed the beneficiary on one but not the other. The former wife sought the proceeds "as the named beneficiary on the policy at the time of deceased's death." *Id.* at 40. The trial court ruled against her and awarded the proceeds to the husband's estate.

The California Supreme Court recognized that "[t]he failure of the husband to exercise his power to change the beneficiary ordinarily indicates that he does not wish to effect such a change." *Id.* (citations omitted). Nevertheless, it *affirmed* the trial court because "each case must be decided upon its own facts." *Id.* (citations omitted). *Thorp* presented a much closer case than ours because the husband there *did* change the beneficiary on one policy but not the other. The most plausible inference would have been that he wanted the ex-wife to remain as beneficiary of the policy he didn't change. Even so, the trial court found that he did intend to change the beneficiary, and the state supreme court deferred to that finding.

*Thorp* distinguished *Grimm* v. *Grimm*, 157 P.2d 841 (Cal. 1945), which had reached the opposite result. The only material difference between the cases was that the trial court in *Grimm* found that the decedent hadn't intended to change the beneficiary, while the trial court in *Thorp* found that he had. In each case, the state supreme court deferred to the trial court's findings.

*Thorp* was followed two decades later by *Life Ins. Co. of N. Am.* v. *Cassidy*, 676 P.2d 1050 (Cal. 1984), where the California Supreme Court again affirmed a trial court judgment in

favor of the estate and against the former wife. The court ruled:

> We have concluded that the designation of appellant as beneficiary was superseded as of the date the parties entered into a marital settlement agreement which comprehensively disposed of all the rights and obligations between them. By terms of the agreement each waived all rights to take any property whatsoever at the death of the other unless such right was conferred by an instrument executed after the date of the agreement. *The evidence produced at trial clearly shows that the fact appellant remained the named beneficiary of the subject insurance policy was not the result of an intent by the deceased to make a new gift of the benefits of the policy to his former spouse, but was contrary to his expressed intent that she be removed as beneficiary of all insurance policies on his life.* We therefore affirm the judgment of the trial court.

*Id.* at 1051 (emphasis added). As the underscored language makes clear, the dispositive issue in *Cassidy* was the decedent's intent, with the beneficiary designation constituting but one indication of that intent, and not even a very significant one.

Chief Justice Bird dissented in *Cassidy* because she thought the evidence that the decedent intended to cut off the former wife's rights under the policy was very weak. Bird emphasized that "Mr. Cassidy's executor failed to offer *any* evidence as to Mr. Cassidy's intentions during the lengthy period between July of 1975 and Mr. Cassidy's death in December of 1976." *Id.* at 1059. The Chief Justice's dissent makes it very clear that the record in *Cassidy* was far flimsier than the record here: Deputy Ortiz made his statement about intending to remove his former spouse from the policies more forcefully and far closer to his untimely death than did Mr. Cassidy. Yet

the *Cassidy* court upheld the finding of the trial court in favor of the estate and against the named beneficiary, while my colleagues reverse.

The California intermediate appellate courts have been even more forgiving of human frailty. In *Meherin* v. *Meherin*, 222 P.2d 305 (Cal. Ct. App. 1950), a case the majority is at pains to distinguish, the ex-wife waived "all of her right, title and interest in and to said policy and the interest and benefits therein." *Id.* at 306. Here, Gloria gave up "all right, title and interest" in Deputy Ortiz's retirement plans and "other deferred benefits." No one, not even Gloria, claims that her interest in the policies survived the divorce; she relies entirely on the fact that Deputy Ortiz didn't change the beneficiary designation. The majority nitpicks at factual distinctions between our case and *Meherin*, but none of them matter because the trial court in both cases found that the decedent intended to change the beneficiary. If we were the triers of fact, we could make whatever findings we pleased. But we're not, so we must accept the district court's finding that Deputy Ortiz did not intend for Gloria to be the beneficiary of his life insurance policies. This makes our case materially indistinguishable from *Meherin*, and yet my colleagues reach the opposite result.

Finally, the California Court of Appeal in *Snyder* v. *Snyder*, 242 Cal. Rptr. 597 (Ct. App. 1987), reached the same result on a surprisingly thin record. *Snyder* involved a contribution savings plan with the deceased husband's employer, Rockwell. The husband "never changed the beneficiary designation of the Rockwell savings plan," which named his former spouse. *Id.* at 598. Nor did the husband even *say* that he intended to make a change. The trial court nonetheless found against the ex-wife and in favor of the estate. In affirming that finding, the appeals court acknowledged:

> [There is] no testimony . . . with respect to [the husband's] intention to change the beneficiary designa-

tion. There is, however, documentary evidence of his intent to supersede the original beneficiary designation: his will. Furthermore, *we can see no reason why [the husband] would have wanted to make a gift to [his ex-wife] of the plan's proceeds*. From a practical standpoint, any desire to retain [her] as beneficiary could have been implemented by submitting a postdivorce designation to that effect.

*Id.* at 600 (emphasis added). As the opinion makes clear, however, the will made no mention of the savings plan; it merely designated the new wife as the estate's residuary legatee. *Id.* at 598. *Snyder* thus relied only on the court's own sense of what the husband probably wanted, not on anything he actually said. Indeed, the court found that his *failure* to *re*-designate the former wife as beneficiary was sufficient proof that he didn't intend for her to take the savings plan.

There are two important things to note about the California cases, both of which my colleagues overlook. The first is that the designation of a beneficiary in a life insurance or similar plan is not very significant when there's been an intervening divorce. The California courts seem to understand, as the majority here does not, that a divorce rearranges all property relationships and, as to property acquired after the divorce, what really matters is how the deceased intended to distribute it. Every single case, including *Grimm*, and Chief Justice Bird's dissent in *Cassidy*, treats the decedent's intent as the dispositive question. In this case, Deputy Ortiz was killed in the line of duty right after his wedding, leaving him virtually no time to make the change; even Chief Justice Bird—who dissented in *Cassidy* largely because 20 months elapsed between the divorce and the husband's death—would be persuaded that Deputy Ortiz meant to leave the policy proceeds to his estate. Second, every one of the majority opinions affirms the judgment of the trial court, even on a paper-thin record. We are seriously out of step with the California cases by reversing the district court here.

What does the majority offer against this cavalcade of contrary authority? There is, of course, the fact that Deputy Ortiz was warned by his lawyer to change the beneficiary designations on his policies. But so what? Most of the decedents in the California cases knew that they should change the beneficiary designation. *See, e.g.*, *Thorp*, 264 P.2d at 39 ("[D]eceased had discussed with his attorney his intention to change the policy so as to make it payable to his estate."); *Cassidy*, 676 P.2d at 1051 ("Both parties were fully advised by their own counsel."). Had they taken the most sensible and prudent course of action, we wouldn't be reading about them in the opinions of the California courts. Here too, the advice given by Deputy Ortiz's lawyer was sound; had he followed it, he would have saved his family a great deal of aggravation, uncertainty and money.

But this doesn't mean—as the majority claims—"that [Deputy Ortiz] and his attorney did not expect the judgment to terminate Gloria's beneficiary status." Maj. op. at 9798. Setting aside the fact that inferences about the parties' state of mind are the province of the trial court, the majority is simply wrong: Deputy Ortiz and his lawyer may well have believed that the divorce settlement did cut off Gloria's interest in the policy—as it surely was meant to—and yet thought it prudent to change the beneficiary designation so as to avoid the delay, expense and grief of the current situation. The majority overreaches by reading anything more into their conversation.

The majority's reliance on the divorce decree's pre-printed notice is a makeweight. The notice was not part of the decree —it appeared below the judge's signature line—and could have had no legal effect on the relationship between the parties. It was good advice, and one wishes Deputy Ortiz had taken it. But a boilerplate notice in fine print at the bottom of a two page form can't possibly undermine the finding that Deputy Ortiz was not insuring his life for Gloria's benefit.

The majority tries to make something of the fact that Deputy Ortiz had a "partial" settlement, whereas the settlement in

some California cases, such as *Meherin*, was "complete." Maj. op. at 9798-99. This may be a distinction, but it makes no difference. The settlement here covered "all remaining issues" of property between Deputy Ortiz and Gloria. It was partial only because it didn't deal with child "custody, visitation, [and] [ ] support," which the parties left for a separate consent decree. Why this should matter, the majority does not explain.

Finally, the majority cites to a series of cases which hold that a beneficiary designation is binding, unless the deceased complied with the insurer's terms for changing the designation or was unable to do so. Maj. op. at 9799-9800 (citing *Manhattan Life Ins. Co.* v. *Barnes*, 462 F.2d 629 (9th Cir. 1972); *Cook* v. *Cook*, 111 P.2d 322 (Cal. 1941); *Pimentel* v. *Conselho Supremo De Uniao Portugueza Do Estado Da California*, 57 P.2d 131 (Cal. 1936)). These cases are inapposite because none of them deals with the effect of a divorce decree. Were the cases the majority relies on in this section applicable to a situation such as ours, they would conflict with *Thorp*, *Cassidy*, *Meherin* and *Snyder*.

I might understand my colleagues' herculean efforts to swim against the current of California caselaw if they were straining to avoid an irrational and unjust result. But what sense is there in spinning fine distinctions to perpetrate an injustice? The wife of a man who put his life on the line to protect us will lose the protection he thought he had provided for her; his children will be left with nothing. As his lawyer predicted, I fully expect we'll hear Deputy Ortiz yelling from his grave when the majority issues its opinion.

After trial, the district court made clear findings and reached a just result that fulfilled Deputy Ortiz's fair expectations and protected his wife and children. Only a procrustean attachment to legal formalism could lead my colleagues to overturn the district court and reach an unconscionable result. Deputy Ortiz, and the family he intended to support, deserve better. Sadly, I must dissent.